1  MICHAEL J. HADDAD (SBN 189114)
2  JULIA SHERWIN (SBN 189268)
   TERESA ALLEN (SBN 264865)
3  HADDAD & SHERWIN LLP
   505 Seventeenth Street
4  Oakland, California 94612
   Telephone: (510) 452-5500
5  Facsimile: (510) 452-5510

6  Attorneys for Plaintiffs

7               **UNITED STATES DISTRICT COURT**

8               **EASTERN DISTRICT OF CALIFORNIA**

9

10  ANTHONY GALLEY, Deceased, by and through his Co-
    Successors in Interest, P.P. and B.P., minors, through
11  their mother and Next Friend, Christina O'Neal,
    Individually and as Co-Successors in Interest for
12  ANTHONY GALLEY, Deceased,
13
14            Plaintiffs,
15
    v.
16
17  COUNTY OF SACRAMENTO, a public entity;
    FORMER SACRAMENTO COUNTY SHERIFF SCOTT
18  R. JONES, in his individual capacity; Jail Commander
    ANTHONY PAONESSA, Jail Medical Director VEER
19  BABU, M.D., MAXIM HEALTHCARE SERVICES,
    INC. dba MAXIM STAFFING SOLUTIONS, a
20  Maryland Corporation; MAXIM HEALTHCARE
    STAFFING SERVICES, INC., a Maryland Corporation;
21  ERICA WOODS, R.N., and DOES 1–20; individually,
    jointly, and severally,
22
23
24            Defendants.
25
26
27
28

Case No: 2:23-cv-00325-WBS-AC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: July 10, 2023
Time: 1:30 p.m.
Dept.: Courtroom 5, 14th Floor

# TABLE OF CONTENTS

I.       BACKGROUND ........................................................................................................1

II.      STANDARD OF REVIEW .....................................................................................1

III.     ARGUMENT ...........................................................................................................2

    A.     Plaintiffs P.P. and B.P. are Appropriately Represented by their Next Friend and Mother, Christina O'Neil, and therefore Have Standing ....................................2

    B.     Decedent Anthony Galley and Christina O'Neil are not Parties to this Action...3

    C.     The County is Not Immune from Liability Under State Law ..............................4

        1.    No Immunity Under Cal. Gov. Code § 844.6 ....................................4

        2.    No Immunity Under Cal. Gov. Code § 845.2 ....................................6

    D.     Plaintiffs' Bane Act Claim is Properly Pleaded....................................................6

    E.     Defendants are not entitled to Immunity Under Cal. Gov. Code §§ 820.2 and 815.2.......................................................................................................................12

        1.    Discretionary Acts Immunity under § 820.2....................................12

        2.    Immunity Under Cal. Gov. Code § 820.8 .........................................14

    F.     Plaintiffs Have Sufficiently Pleaded Claims Under the ADA and RA..............16

        1.    Plaintiffs Plausibly Pleaded that Mr. Galley Was Completely Denied Access to Medical Services Because of his Disability ....................17

        2.    Plaintiffs Plausibly Pleaded that the County Discriminated Against Mr. Galley Because of his Disability................................................18

        3.    Plaintiffs Plausibly Pleaded that the County Failed to Provide Mr. Galley With Reasonable Accommodations for his Known Disability ........................................................................................................19

IV.      CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*AE v. County of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ........................................................................12, 13

*Anderson v. Cnty. of Siskiyou*,
    No. C 10-01428 SBA,
    2010 U.S. Dist. LEXIS 99927 (N.D. Cal. Sept. 13, 2010) .................................17

*Armstead v. Cnty. of Alameda*,
    No. 21-cv-05257-LB,
    2022 U.S. Dist. LEXIS 54807 (N.D. Cal. March 26, 2022)........................10, 11

*Atayde v. Napa State Hosp.*,
    255 F. Supp. 3d 978 (E.D. Cal. 2017) ...............................................................18

*Atayde v. Napa State Hosp.*,
    No. 1:16-cv-00398-DAD-SAB,
    2016 U.S. Dist. LEXIS 126639 (E.D. Cal. Sept. 16, 2016)............................9, 17

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)............................................................................................2

*Bonner v. Lewis*,
    857 F.2d 559 (9th Cir. 1988) .............................................................................16

*Coalition of Clergy, Lawyers, and Professors v. Bush*,
    310 F.3d 1153 (9th Cir. 2002) ............................................................................3

*Cohen v. City of Culver City*,
    754 F.3d 690 (9th Cir. 2014) .............................................................................16

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) .............................................................................18

*Duvall v. County of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) .....................................................................16, 19

*Eaton v. Two Rivers Corr. Inst. Griev. Coordinator*,
    No. 2:20-cv-1251-SI,
    2020 U.S. Dist. LEXIS 235446 (D. Or. Dec. 15, 2020) ...................................19

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................2

*Estate of Abdollahi v. Cty. of Sacramento*,
    405 F. Supp. 2d 1194 (E.D. Cal. 2005)..................................................................6

*Gordon v. County of Orange*,
    888 F.3d 1118 (9th Cir. 2018) .........................................................................9

*Hampton v. California, et al.*,
    No. 21-cv-03058-LB,
    2022 U.S. Dist. LEXIS 11817 (N.D. Cal. Jan. 21, 2022) ....................................11

*Harris v. Escamilla*,
    736 Fed.Appx. 618 (9th Cir. 2018)..............................................................7, 11

*Hauseur v. Clark*,
    1:14-cv-01987-DAD-EPG (PC),
    2016 U.S. Dist. LEXIS 162849 (E.D. Cal. November 23, 2016) .........................6

*J.H. v. County of San Mateo*,
    No. 20-cv-00961-VC,
    2021 U.S. Dist. LEXIS 73983 (N.D. Cal. Apr. 16, 2021) ....................................11

*Johnson v. Shasta Cnty.*,
    83 F.Supp.3d 918 (E.D. Cal. 2015).................................................................2

*Keates v. Koile*,
    883 F.3d 1228 (9th Cir. 2018) .........................................................................20

*Kiman v. New Hampshire Dep't of Corr.*,
    451 F.3d 274 (1st Cir. 2006).........................................................................17

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ........................................................2

*Lovell v. Chandler*,
    303 F.3d 1039 (9th Cir. 2002) .......................................................................16

*Lowe v. County of Butte*,
    No. 2:20-cv-01997-JAM-DMC,
    2021 U.S. Dist. LEXIS 89947 (E.D. Cal. May 11, 2021)..................................10

*Luttrell v. Hart*,
    No. 5:19-cv-07300-EJD,
    2020 U.S. Dist. LEXIS 173856 (N.D. Cal. Sept. 22, 2020) ..........................9, 10

*M.H. v. County of Alameda*,
    90 F.Supp.3d 889 (N.D. Cal. 2013) ......................................................9, 10, 12

*M.S. v. County of Ventura*,
    No. CV16-03084-BRO (RAOx),
    2017 U.S. Dist. LEXIS 230939 (C.D. Cal. Mar. 7, 2017) ....................................9

*Martinez v. California*,
    444 U.S. 277 (1980) ..................................................................................................4

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ...............................................................................18

*McKibben v. McMahon,*
    (C.D. Cal., Apr. 17, 2015,
    No. EDCV 14-02171 JGB (SPx)], 2015 U.S.Dist. Lexis 176696 ........................8

*Monell v. Department of Soc. Svcs*.,
    436 U.S. 658 (1978) ..................................................................................................1

*Neuroth v. Mendocino Cty.*,
    No. 15-cv-03226-NJV,
    2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016) ......................................9

*Page v. County of Madera*,
    No. 1:17-cv-00849-DAD-EPG,
    2017 U.S. Dist. LEXIS 199127 (E.D. Cal. Dec. 2, 2017) ......................................9

*Payan v. L.A. Cmty. College Dist.*,
    11 F.4th 729 (9th Cir. 2021) ..................................................................................18

*Pennsylvania Dep't of Corr. v. Yeskey*,
    524 U.S. 206 (1998)................................................................................................16

*Pierce v. Cnty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ..................................................................16, 17, 19

*Polanco v. California*.,
    No. 21-cv-06516-CRB,
    2022 U.S. Dist. LEXIS 87755 (N.D. Cal. May 16, 2022) ....................................10

*Reese v. Cty. of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018) .............................................................................7, 10

*Robertson v. Las Animas Cty. Sherriff's Dep't*,
    500 F.3d 1185 (9th Cir. 2007) ...............................................................................19

*Rodriguez v. County of L.A.*,
    891 F.3d 776 (9th Cir. 2018) ...........................................................................10, 15

*Sandoval v. Cnty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) ............................................................10

*Shoar v. Cnty. of Santa Clara*,
  No. C 22-00799 WHA,
  2022 U.S. Dist. LEXIS 189548 (N.D. Cal October 17, 2022) ...........10

*Simmons v. Navajo County*,
  609 F.3d 1011 (June 23, 2010) .........................................................19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) ...........................................................2

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ......................................................2, 14

*Swierkiewicz v. Sorema, N.A.*,
  534 U.S. 506 (2002).............................................................................1

*United States v. Georgia*,
  546 U.S. 151 (2006).........................................................................19

*Uriarte v. Bostic*,
  No.: 15cv1606-MMA (PCL),
  2017 U.S. Dist. LEXIS 81529; (S.D. Cal. May 26, 2017).................13

*Vargas v. Lambert*,
  159 F.3d 1161 (9th Cir. 1998) ............................................................3

*Vasquez v. Los Angeles Cnty.*,
  487 F.3d 1246 (9th Cir. 2007) ............................................................2

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990).............................................................................3

*Zukle v. Regents of the Univ. of California*,
  166 F.3d 1041 (9th Cir. 1999) ..........................................................16

California Cases

*Barner v. Leeds*,
  24 Cal.4th 676 ...................................................................................12

*Caldwell v. Montoya*,
  10 Cal.4th 972 (1995) ........................................................................12

*Castaneda v. Dep't of Corr. & Rehab.*,
　　212 Cal.App.4th 1051 (2013) ................................................................................. 5

*Cornell v. City and County of San Francisco*,
　　17 Cal.App.5th 766 (2017) (review denied) ................................................. passim

*Johnson v. State of California*,
　　69 Cal.2d 782 (1968) ............................................................................... 12, 13

*Jones v. Kmart Corp.*,
　　17 Cal.4th 329 (1998) ........................................................................................ 7

*Lawson v. Superior Court*,
　　180 Cal.App.4th 1372 (2010) ........................................................................... 5

*Lopez v. Southern Cal. Rapid Transit Dist.*,
　　40 Cal.3d 780 (1985) ........................................................................................ 13

*People v. Lashley*,
　　1 Cal.App.4th 938 (1991) .................................................................................. 8

*Shoyoye v. County of Los Angeles*,
　　203 Cal.App.4th 947 (2012) .............................................................................. 9

*Simmons v. Superior Court*,
　　7 Cal.App.5th 1113 (2016) ................................................................................. 8

*Taylor v. Buff*,
　　172 Cal. App. 3d 384 (1985) ............................................................................. 6

*Venegas v. County of Los Angeles*,
　　32 Cal.4th 820 (2004) ................................................................................. 7, 8, 9

*Zelig v. Cty. of Los Angeles*,
　　27 Cal.4th 1112 (2002) ...................................................................................... 6


Federal Statutes

29 U.S.C. § 794 ............................................................................. 21, 22, 25

42 U.S.C. § 12132 ....................................................................... 21, 22, 25

42 U.S.C. § 1983 ................................................................................. 1

Title VI, 42 U.S.C. § 2000d et seq. .................................................. 24

## California Statutes

California Civil Code § 52.1 ................................................................................passim

California Code of Civil Procedure §§ 377.10 *et seq.* .......................................3

California Government Code § 815.2 ...........................................................4, 12, 14

California Government Code § 820.8 ...............................................................14, 16

California Government Code § 821.6 ........................................................................5

California Government Code § 844.6 ...............................................................4, 5, 6

California Government Code § 845.2 ....................................................................4, 6

California Government Code § 845.6 ...............................................................1, 4, 5

## Rules

Eastern District Local Rule 202(a) ..........................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................2

Federal Rule of Civil Procedure 17 (c)(2) ...............................................................4

Federal Rule of Civil Procedure 17(c)(2) ................................................................2

Federal Rule of Civil Procedure 8(a)(2) ..................................................................1

1

## I.   BACKGROUND

2        This is a civil rights/wrongful death action arising from Defendants' deliberate indifference to the

3   serious medical needs of pretrial detainee, Anthony Galley, resulting in his death on February 15, 2022 at

4   the Sacramento County jail.

5        Mr. Galley's minor children, P.P. and B.P., bring civil rights/wrongful death claims against

6   Sacramento County and its employees, former Sacramento County Sheriff Scott R. Jones, Jail

7   Commander Anthony Paonessa, Jail Medical Director, Veer Babu, M.D.; Maxim Healthcare Services,

8   Inc. and Maxim Healthcare Staffing Services (collectively "the Maxim entities"), and Maxim employee,

9   Erica Wood, R.N. under: (1) 42 U.S.C. § 1983 for deliberate indifference to Mr. Galley's serious medical

10   needs against Nurse Woods; (2) *Monell* and supervisory liability claims against the County and

11   Defendants Jones, Paonessa, and Babu; (3) violations of California Civil Code §52.1 against all

12   Defendants; (4) negligence against Defendants Jones, Paonessa, Babu, and the Maxim corporate

13   Defendants; (5) violation of Cal. Gov. Code § 845.6 (failure to summon emergency medical care) against

14   the County and Nurse Woods; and (6) Americans with Disabilities Act and the Rehabilitation Act against

15   the County.

16        The County Defendants (County, Jones, Paonessa, and Babu) do not challenge Plaintiffs' § 1983

17   claims against the County and Defendants Jones, Paonessa, and Babu for *Monell* and supervisory liability,

18   nor the claims against the Maxim Defendants, including Nurse Woods.  As to the causes of action that

19   Defendants do challenge, Plaintiffs have plausibly and sufficiently pled these claims, no immunities apply

at the pleading stage, and the County Defendants' motion to dismiss should be denied.

20   ## II.   STANDARD OF REVIEW

21        A complaint must satisfy the general notice pleading requirements of Federal Rule of Civil

22   Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is

23   entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule reflects a simplified and lenient pleading system that

24   "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep

25   litigants out of court.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513–14 (2002).[1]  "[A] complaint

26

27   ---
[1] Even after *Iqbal* and *Twombly*, *Swierkiewicz* remains good law.  See *Bell Atlantic v. Twombly*, 550 U.S. 544, 569-70 (2007) (explaining that the Court's analysis does not run counter to *Swierkiewicz*); See *also*

28   *Starr v. Baca*, 652 F.3d 1202, 1213-16 (9th Cir. 2011) (reconciling *Swierkiewicz* with *Iqbal* and

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  The factual allegations need only "be enough to raise a right to relief above the speculative level." *Id.*  The claims must be "plausible," which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting them. *Id.* at 556.

A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007), and it "'must consider the complaint in its entirety[.]'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).  When allegations may yield multiple inferences, the court must adopt whichever plausible inference supports the Plaintiff and deny the motion to dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).  Pleading facts "'on information and belief' is sufficient to survive a motion to dismiss as long as the other *Iqbal-Twombly* factors are satisfied." *Johnson v. Shasta Cnty.*, 83 F.Supp.3d 918, 926 (E.D. Cal. 2015) (citations omitted).

Finally, leave to amend shall by freely given when justice so requires. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is to be applied with extreme liberality." *Id*. (citations omitted).  See also *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

## III.    ARGUMENT

### A.  Plaintiffs P.P. and B.P. are Appropriately Represented by their Next Friend and Mother, Christina O'Neil, and therefore Have Standing

Defendants challenge Plaintiffs' standing because they, as minors, did not move for an appointment of a guardian ad litem to represent them, but instead sue through their mother, and 'next friend,' Christina O'Neil.

Under Federal Rule of Civil Procedure 17(c)(2), "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a **next friend** or by a guardian ad litem." (emphasis added).  Eastern District Local Rule 202(a) further provides that,

> "Upon commencement of an action or upon initial appearance in defense of an action by or on behalf of a minor or incompetent person, the attorney representing the minor or incompetent person shall present (1) appropriate evidence of the appointment of a representative for the minor or incompetent person under state law or (2) a motion for the

---

*Twombly*); *Cormier v. All Am. Asphalt*, 458 Fed. Appx. 620 (9th Cir. 2011) (acknowledging that *Swierkiewicz* is still good law).

appointment of a guardian ad litem by the Court, **or, (3) a showing satisfactory to the Court that no such appointment is necessary to ensure adequate representation of the minor or incompetent person."**

To establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to the court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petition.  *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990)) see also *Coalition of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1159-60 (9th Cir. 2002)

Plaintiffs B.P and P.P. are minors and cannot represent themselves in this matter, and thus satisfies the first prong of the *Whitmore* test.  The Ninth Circuit has recognized "a per se rule" that a parent satisfies the second prong of the *Whitmore* test.  See *Vargas v. Lambert*, 159 F.3d 1161, 1168 (9th Cir. 1998) (finding that when the 'next friend' is the mother, absent evidence to the contrary, the court presumes her dedication to plaintiff's best interests).  Additional facts supporting Ms. Galley's representative status as next friend for her minor children are pled in the First Amended Complaint (FAC), (Doc. 20, ¶¶ 3-4).

On February 24, 2023, Christina O'Neil filed co-successor in interest declarations on behalf of Plaintiffs B.P. and P.P.  Ms. O'Neil declared that she is the mother of minors B.P. and P.P. and will represent them in all legal matters until they reach the age of majority.  (Docs. 7 and 8).  Plaintiffs are adequately represented by their mother and an appointment of a guardian ad litem is unnecessary.

**B.  Decedent Anthony Galley and Christina O'Neil are not Parties to this Action**

Defendants take issue with the caption of the FAC as it relates to decedent, Anthony Galley, and Plaintiffs' mother and next friend, Christina O'Neil.  Clearly Mr. Galley and Ms. O'Neil are not parties to this case.  The only plaintiffs in this case are Anthony Galley's minor children, P.P. and B.P.  Mr. Galley is named in the FAC because his children are his co-successors in interest and bring survival claims on his behalf.  Plaintiffs P.P. and B.P also sue in their individual capacities through their mother and next friend, Christina O'Neil, which is why Ms. O'Neil is named in the FAC.  Paragraph 3 (and ¶ 4 with respect to Plaintiff B.P.) of the FAC (Doc. 20) explains this in depth:

> Plaintiff P.P. is the fourteen-year-old daughter of Decedent ANTHONY GALLEY. and a resident of the State of Hawaii.  Plaintiff P.P., a minor, brings these claims through her mother and Next Friend, Christina O'Neil, individually and as Co-Successor in Interest

for her father, Decedent ANTHONY GALLEY, pursuant to California Code of Civil Procedure §§ 377.10 *et seq.* and federal civil rights laws.  Decedent ANTHONY GALLEY was unmarried at the time of his death.  A Co-Successor in Interest declaration was previously filed (doc. 8).  Christina O'Neil is not a plaintiff in this action; she appears only in a representative capacity for her children as their Next Friend, as permitted by Fed. R. Civ. Proc 17 (c)(2) and Local Rule 200 (a)(3). No appointment of a guardian ad litem is necessary to ensure the adequate representation of the minors, P.P. and B.P., because Rule 17 explicitly provides that "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem," and because, (a) Christina O'Neil is the mother of minor Plaintiffs P.P. and B.P, with full custody and legal rights to make legal decisions for the minor Plaintiffs, who reside with her, and she agrees to represent her children's interest in this matter as their Next Friend; (b) there is no other person with a closer relationship of care to these minor Plaintiffs; (c) Christina O'Neil retained the law firm of Haddad & Sherwin LLP on behalf of her children to represent her children's interests in this matter; (d) Christina O'Neil has no personal interest in this matter; (e) Christina O'Neil understands that any settlement or resolution of this matter for her children, the minor Plaintiffs, will require court oversight and approval; and (f) Christina O'Neil will receive no compensation whatsoever for her services as Next Friend for her children in this matter, and will receive no part of any settlement or judgment her children may receive.

The FAC correctly identifies minors P.P. and B.P. as the only plaintiffs in this matter.

### C.  The County is Not Immune from Liability Under State Law

Defendant contends that Plaintiff's state law causes of action fail because (1) the County is immune from liability for injuries to prisoners under Cal. Gov. Code § 844.6; and (2) the County cannot be held liable for failure to provide adequate staffing, facilities, or services to Mr. Galley under Cal. Gov. Code § 845.2.

The only state causes of action against the County are for its vicarious liability under Cal. Gov. Code § 815.2 in Count Three, the Bane Act Claim (Civil Code. Section 52.1) and Count Six, failure to summon medical care (Cal. Gov. Code § 845.6).  Plaintiffs do not bring negligence claims against the County.  Plaintiffs' federal claims against the County preempt state-law immunity.  See *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

### 1.  No Immunity Under Cal. Gov. Code § 844.6

### Failure to Summon Medical Care (Cal. Gov. Code §845.6)

Cal Gov. Code § 844.6 provides that "a public entity is not liable for . . . [a]n injury to any prisoner … except as provided in this section and in Sections 814, 814.2, 845.4, and **845.6**." (emphasis

added).  Section 845.6 provides that a public entity is liable where its employee "knows or has reason to know that the prisoner is in need of immediate medical care and [] fails to take reasonable action to summon such medical care."  Plaintiffs properly pleaded, and Defendants did not challenge the sufficiency of the pleading, that (1) Nurse Woods "was a public employee to the extent that she was performing a public function at all materials times, including part of Defendant COUNTY'S constitutional duties owed to Decedent," and (2) "Defendants WOODS and Does 1-20 knew or had reason to know that MR. GALLEY was in need of immediate and higher-level medical care, treatment, observation and monitoring, including being placed on appropriate CIWA or alcohol withdrawal protocol, or transferred to a hospital if Defendants were not going to provide him with detoxification and withdrawal care, and each failed to take reasonable action to summon and/or to provide him access to such medical care and treatment."  (Doc. 20, ¶ 79).

Failure to summon medical care claims under § 845.6 are specifically exempt from § 844.6(a)(2)'s general grant of immunity to public entities.  See *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070, (2013) (a public entity may be liable under Cal. Gov. Code § 845.6 when it fails to summon immediate medical care for a serious and obvious medical condition requiring immediate care); *Lawson v. Superior Court*, 180 Cal.App.4th 1372, 1383-1384 (2010) (Gov. Code § 844.6 does not immunize a public entity or its employee where, as here, a public employee, "acting within the scope of his employment, fails to provide medical care to a prisoner and has reason to know that need for medical care is immediate.").

Under § 845.6, the County is not immune from Plaintiffs' failure to summon immediate medical care claim.

### Bane Act

While California Government Code § 844.6 provides "a public entity" with immunity from some claims stemming from injuries to prisoners, § 844.6(d) specifically negates such immunity for claims based on the "negligent or wrongful act or omission" of "a public employee."  Nothing in § 844.6 "exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission."  *Id.*  (emphasis added).

Additionally, the Bane Act, as amended and operative by the time of Mr. Galley's death, provides,

"**(n)** The state immunity provisions provided in Sections 821.6, **844.6**, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer, as those terms are defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, **or directly against a public entity that employs a peace officer or custodial officer**, under this section." (Emphasis added).  Since Sheriff Jones and Jail Commander Paonessa are peace officers and/or custodial officers, Gov. Code § 844.6 does not provide immunity for the County based on their violations of the Bane Act.

### 2.   No Immunity Under Cal. Gov. Code § 845.2

Gov. Code § 845.2 immunizes public entities and employees from liability for failure to provide prisons with "sufficient equipment, personnel, or facilities therein."  The statute "was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation.  In other words, essentially budgetary decisions of these officials were not to be subject to judicial review in tort litigation."  *Hauseur v. Clark*, 1:14-cv-01987-DAD-EPG (PC), 2016 U.S. Dist. LEXIS 162849, *16-17 (E.D. Cal. November 23, 2016) citing *Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112, 1142 (2002).

Courts have applied § 845.2 to bar claims for faulty equipment, insufficient equipment and staff, and denying prisoners access to existing programs *in light of budget or policy deficiencies*.  *Taylor v. Buff,* 172 Cal. App. 3d 384, 387 (1985) (applying § 845.2 to bar claims for nonfunctioning locking system on cell doors when funds were insufficient to make necessary repairs); *Estate of Abdollahi v. Cty. of Sacramento*, 405 F. Supp. 2d 1194 (E.D. Cal. 2005) (alleged inadequate staffing to perform safety checks).  Defendants were not entitled to immunity under § 845.2 in *Hauseur, supra.*  There, Plaintiff's allegations were premised on Defendants' failure to provide Kosher meals and religious services in a state prison.  The Court held that § 845.2 "only allows immunity from . . . claims that involve insufficient equipment or supplies due to budgetary issues or policy decisions[,]" and nothing in the plaintiff's complaint alleged that he was denied Kosher meals and religious services for those reasons.  *Id.* at *18.

Here, there is nothing in the FAC suggesting that insufficient equipment or supplies due to budgetary issues or policy decisions affected the County's decisions in this matter.  This immunity does not apply here.

### D.  Plaintiffs' Bane Act Claim is Properly Pleaded

The Bane Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law.  Cal. Civ. Code, § 52.1, subd. (b)–(c).  The California Supreme Court long ago explained that the Bane Act simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.,* 17 Cal.4th 329, 334 (1998).  Many if not all violations of fundamental rights could be so framed. *Venegas v. County of Los Angeles,* 32 Cal.4th 820, 850-51 (2004) (Baxter, J., concurring).

In *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (review denied), the Court of Appeal noted that the Bane Act has been "the source of much debate and confusion" in federal district courts, and "[w]e have endeavored to provide some clarity."  *Id.* at 801.  *Cornell* explained that the California Supreme Court "declined to place added restrictions on the scope of section 52.1" beyond its plain language (citing *Venegas,* 32 Cal.4th at 843), and therefore, "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."  *Id.* at 800.  Indeed, as *Cornell* points out, the Act simply requires an interference with rights "*by* threat, intimidation, or coercion."  *Id.*

Applying that rule to the false arrest claim at issue there, *Cornell* concluded:

> Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, *in addition*, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved—unlawful arrest.

*Id*.  The Ninth Circuit has adopted this holding from *Cornell*.  See *Harris v. Escamilla*, 736 Fed.Appx. 618, 621 (9th Cir. 2018) (citing *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (recognizing *Cornell* as setting the controlling Bane Act pleading standard in cases such as this one alleging more than mere negligence).

Thus, given that the required "threat, intimidation, or coercion" may be inherent in the violation of a right, *Cornell* went on to hold that the threat, intimidation or coercion required by the Act can be proven simply by the violation of a constitutional right if done with specific intent: "where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the

circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id.*, at 801-02.

To prove that defendants violated a constitutional right with specific intent, the plaintiff must show: (1) that the "right at issue [is] clearly delineated and plainly applicable under the circumstances of the case;" and (2) that "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by the right." *Id.*, at 803.  As for the second step, whether the defendants "understood they were acting unlawfully [is] not a requirement. **Reckless disregard of the 'right at issue' is all that [is] necessary."** *Id.*, at 804 (emphasis added). "[E]ven if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—*i.e.*, 'in reckless disregard of constitutional [or statutory] prohibitions or guarantees.'" *Id.*, at 803 (quoting *People v. Lashley,* 1 Cal.App.4th 938, 948–949 (1991)).

*Cornell's* holding that violation of a constitutional right with specific intent fully satisfies a claim for relief under the Bane Act was anticipated by the California Supreme Court, and particularly Justice Baxter's concurrence in *Venegas*: "[A]lthough the proscribed conduct is further delineated by the requirement that it be delivered in the form of a threat, intimidation, or coercion, it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component."  *Venegas*, 32 Cal.4th at 850-51.

*Cornell* noted that "[its] reading of Section 52.1 is consistent with the view taken by 'the majority of federal district courts in California [, which] have held [in Bane Act cases] that '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'"  *Cornell*, 17 Cal.App.5th at 802, n. 31 (quoting *Simmons v. Superior Court,* 7 Cal.App.5th 1113, 1126 (2016) and citing numerous other authorities).  Among the many other cases cited in footnote 31, the *Cornell* Court noted that courts already had held due process violations automatically satisfied the Bane Act's "threat, intimidation, or coercion" requirement:

And in some circumstances, depending on the right alleged to have been interfered with,

physical force is not required at all. ([*McKibben v. McMahon* (C.D. Cal., Apr. 17, 2015, No. EDCV 14-02171 JGB (SPx))], 2015 U.S.Dist. Lexis 176696 at p. *8 ["coercive choice" forced upon gay, bisexual or transgender inmates to accept segregated housing with fewer privileges than other inmates]; *M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F.Supp.3d 889, 898 [deliberate indifference to prisoner's medical needs].

*Id.*

In *M.H., supra,* Northern District Judge Jon Tigar also presaged *Cornell's* interpretation of the Bane Act, concluding that "the relevant distinction under the Bane Act is between intentional and unintentional conduct." 90 F.Supp.3d at 898. "From its inception, 'deliberate indifference' has been a substantially higher standard than negligence, and has been associated with affirmatively culpable conduct." *Id.*, (citations omitted). The court went on to explain how deliberate indifference requires "a purposeful act or failure to respond …." *Id.,* at 899. Thus,

> Because deliberate indifference claims necessarily require more than "mere negligence," a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights presents a case far more like *Venegas* [*supra,* 32 Cal.4th 820 (2004)] than *Shoyoye* [*v. County of Los Angeles*, 203 Cal.App.4th 947 (2012)] and adequately states a claim for relief under the Bane Act.

*Id.* Since *M.H.*, the Ninth Circuit has explained that the objective deliberate indifference standard that now applies to pretrial detainees' denial of medical care claims is essentially "reckless disregard" – the same standard that can prove "threat, intimidation, or coercion" under the Bane Act. See *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) ("… the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard.").

Several other courts have followed *M.H.'s* holding for due process claims predicated on a denial of medical care to an inmate, including *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) ("[t]he court finds the reasoning of the decision in *M.H.* to be more persuasive, adopts that analysis and **finds that threats, coercion, and intimidation are inherent in a deliberate indifference claim**."); *M.S. v. County of Ventura*, No. CV16-03084-BRO (RAOx), 2017 U.S. Dist. LEXIS 230939, at *73-75 (C.D. Cal. Mar. 7, 2017) (same); *Page v. County of Madera*, No. 1:17-cv-00849-DAD-EPG, 2017 U.S. Dist. LEXIS 199127, at *10-11 (E.D. Cal. Dec. 2, 2017) (same); *Luttrell v. Hart*, No. 5:19-cv-07300-EJD, 2020 U.S. Dist. LEXIS 173856, at *15-16 (N.D. Cal. Sept. 22, 2020) (same); *Neuroth v. Mendocino Cty.*, No. 15-cv-03226-NJV, 2016 U.S. Dist.

LEXIS 11109, at *22 (N.D. Cal. Jan. 28, 2016) (Bane Act claim pled where Sheriff implemented policies, practices, and customs that led to inmate's death due to correctional deputies' deliberate indifference to serious medical/psychiatric needs).

Even though district courts throughout California have generally followed the *M.H.* line of cases and have held that deliberate indifference to an inmate's medical needs automatically satisfies the Bane Act's coercion requirement, Defendants ignore those cases and rely on *Lowe v. County of Butte*, No. 2:20-cv-01997-JAM-DMC,  2021 U.S. Dist. LEXIS 89947, at *27 (E.D. Cal. May 11, 2021), where the court held that a claim for deliberate indifference to serious medical needs must plead separate facts showing a threat, intimidation, or coercion to state a plausible claim under the Bane Act.  Notwithstanding the minority holding in *Lowe*, courts have continued to hold that the coercion element of the Bane Act is satisfied when plaintiffs allege deliberate indifference to an inmate's safety.  See *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 U.S. Dist. LEXIS 189548, at 10* (N.D. Cal October 17, 2022) ("A plaintiff can satisfy the specific intent requirement of the Bane Act by showing defendant acted with reckless disregard of the right at issue"); *Polanco v. California*., No. 21-cv-06516-CRB, 2022 U.S. Dist. LEXIS 87755, at *10 (N.D. Cal. May 16, 2022) (observing that "a defendant who acts with deliberate indifference toward an inmate may satisfy the 'threat, intimidation, or coercion' element, as the custody context makes that violation especially coercive" and collecting cases holding similarly); *Armstead v. Cnty. of Alameda*, No. 21-cv-05257-LB, 2022 U.S. Dist. LEXIS 54807, at 24* (N.D. Cal.  March 26, 2022) ("[B]y pleading deliberate indifference, the plaintiffs here alleged the specific intent required for the Bane Act claim.").

Numerous other courts have applied *Cornell's* holding (specific intent = "by threat, intimidation, or coercion") to claims other than false arrest: see *Reese v. County of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018) (Fourth Amendment excessive force); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (Fourth Amendment claim based on impoundment of a vehicle); *Rodriguez v. County of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (Eighth Amendment excessive force to inmate); *Luttrell v. Hart*, No. 5:19-cv-007300-EJD, 2020 U.S. Dist. LEXIS 173856, at *5 (N.D. Cal. Sept. 22, 2020) (due process claim for failure to protect an inmate from violence).  The *Luttrell* court held, "if a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then he has

sufficiently alleged the intent required for the Bane Act claim."  2020 U.S. Dist. LEXIS 173856, at *5 (citing Eighth Amendment medical-needs cases holding that a viable claim of deliberate indifference satisfies the intent element of the Bane Act); *Hampton v. California, et al.*, No. 21-cv-03058-LB, 2022 U.S. Dist. LEXIS 11817, at *2 (N.D. Cal. Jan. 21, 2022) (Eighth Amendment denial of medical care).

See also *Harris*, 736 Fed. Appx. at 621 (finding that violations of First and Fourteenth Amendments, if pleaded with specific intent, are sufficient to state a Bane Act claim); *Armstead v. County of Alameda*, No. 21-cv-05257-LB, 2022 U.S. Dist. LEXIS 54807 at *23-26 (N.D. Cal. Mar. 26, 2022) (defendants' deliberate indifference in due process state created danger claim satisfies Bane Act coercion requirement); *J.H. v. County of San Mateo*, No. 20-cv-00961-VC, 2021 U.S. Dist. LEXIS 73983, at *4 (N.D. Cal. Apr. 16, 2021) (same).

Plaintiffs plausibly alleged violations of the Bane Act against Defendants Jones, Paonessa, and Babu.  The FAC states:

> By their acts, omissions, customs, and policies, DEFENDANTS WOODS, JONES, PAONESSA, BABU, DOES 1-20, COUNTY, and MAXIM by threat, intimidation, and/or coercion, or with reckless disregard for rights, interfered with, attempted to interfere with, and violated Plaintiffs' and MR. GALLEY's rights ….

(FAC ¶ 63).

> Defendants' violations of Plaintiffs' and Decedent' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.  Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights as described above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:
>
>> a. Intentionally and with deliberate indifference, depriving and/or preventing MR. GALLEY from receiving necessary, life-saving medical care and treatment while he was under Defendants' complete custody, care, and protection and unable to secure such care and treatment for himself;
>>
>> b. Making the conscious choice not to consistently provide the required observation for inmates at high risk of alcohol withdrawal, knowing that some inmates like MR. GALLEY will be deprived of necessary, life-saving care;
>>
>> c. Instituting and maintaining the COUNTY's customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as MR. GALLEY and Plaintiffs would be deprived of rights;
>>
>> d. Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (c) when it was also obvious that in doing so, Decedent was at

> grave risk of life-threatening alcohol withdrawal and death, and Plaintiffs' rights as Decedent's children also would be violated.

(FAC ¶ 64).

> Further, each Defendant violated Plaintiffs' and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

(FAC ¶ 68).

Based on *Cornell, M.H.,* and their progeny, Plaintiffs plausibly pleaded that Defendants intentionally, and with deliberate indifference to Mr. Galley's serious medical needs, deprived him of constitutional rights by threat, intimidation, or coercion, in violation of the Bane Act.

### E.  Defendants are not entitled to Immunity Under Cal. Gov. Code §§ 820.2 and 815.2

#### 1.  Discretionary Acts Immunity under § 820.2

Under Gov. Code § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion was abused."  Section 820.2 addresses only public employees, not public entities. Defendants claim that if Sheriff Jones is immune from liability under § 820.2, then the County is also immune under Gov. Code § 815.2, which provides for public entity immunity.

Section 820.2 allows immunity for "basic policy decisions" by government officials, but not for "the ministerial implementation of that basic policy."  *Johnson v. State of California*, 69 Cal.2d 782, 796 (1968).  This distinction is "between the 'planning' and 'operational' levels of decision-making."  *Id.* at 794.  "Lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated" are not immune.  *Caldwell v. Montoya,* 10 Cal.4th 972, 981 (1995). "[N]ot all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *AE v. County of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (quoting *Barner v. Leeds*, 24 Cal.4th 676, 684-85).  Rather, § 820.2 is meant to address "quasilegislative policy decisions."  *Id.*  "Discretionary" must be construed "narrowly," and is not meant to be interpreted "literally."  *Id.*

"[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee."  *Id.*

Without evidence or support in the FAC, Defendants assert that "Sheriff Jones has discretionary

act immunity for the negligent supervision, hiring, and retention claim because the funding, type of program, how a program will be designed, how the policy/practices fit or are suited to carry out welfare and security and political goals, are highly discretionary and at times only to be made by the Sheriff."[2] (Defs' MTD, p. 10).  Rather than describe an actual policy decision made by Sheriff Jones that grants him immunity from liability under this statue, Defendants simply provide a broad overview of functions of Defendant Jones's role as Sheriff with no mention of any discretionary policy decision he made as it relates to Plaintiffs' claims.  "An employee's normal job duties are not determinative; the burden rests with government defendants to demonstrate that they are entitled" to immunity.  *AE*, 666 F.3d at 640; See also *Johnson*, 69 Cal. 2d at 794 n.8 ("[T]o be entitled to immunity[,] the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place.").

Facts surrounding the decisions made by Sheriff Jones are unknown at this stage.  Even if some unpleaded programmatic decisions made were discretionary in nature, other decisions, such as, Defendants' failure to reasonable staff, train, and supervise jail deputies and health care personnel tasked with screening, admitting, observing, and monitoring, and protecting inmates like Mr. Galley, (FAC ¶ 33, 46, 54-58), would be ministerial decisions.  And importantly, Defendants' knowledge of, but consistent failure to **execute** the *Mays* consent decree nearly two years before and after Mr. Galley's death, as reflected in the monitoring reports, (FAC ¶ 53), would be a ministerial decision.  It is premature, and the FAC lacks information to decide who may have made a relevant "quasilegislative policy decision."  Even if someone made such a decision, the alleged acts and omissions which ultimately caused Mr. Galley's death are "subsequent ministerial actions in the implementation of [the] basic decision," *Johnson*, 69 Cal.2d at 797.

The California Supreme Court has held that the showing necessary for discretionary acts immunity cannot be made at the demurrer [motion to dismiss] stage.  *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985).  Similarly, courts within the Ninth Circuit "[have] indicated that it may be inappropriate to find discretionary act immunity applies at the pleading stage."  *Uriarte v. Bostic*, No.: 15cv1606-MMA (PCL), 2017 U.S. Dist. LEXIS 81529, *27-28; (S.D. Cal. May 26, 2017).  See *AE v.*

---

[2] Defendants do not brief why Jail Commander Paonessa or Medical Director Babu should have immunity.

*County of Tulare*, 666 F.3d at 640 (declining to apply §820.2 immunity at the pleading stage: "[i]t would be odd indeed if a plaintiff included in a complaint allegations that would establish a basis for finding discretionary immunity on the part of government defendants").

Sheriff Jones is not entitled to discretionary act immunity under § 820.2, nor is the County immune under §815.2.

### 2.  Immunity Under Cal. Gov. Code § 820.8

California Government Code § 820.8 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person.  Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."  Defendants assert that Defendants Jones, Paonessa, and Babu "cannot be held liable for the acts and omissions of other jail staff in preventing Nurse Woods from allegedly completing detoxing orders.  They were not personally at fault, nor were they present, during Decedent's brief incarceration." (Doc. 23-1, MTD, p. 11).  Section 820.8 is inapplicable here because Plaintiffs do not rely on vicarious liability in their allegations against Defendants Jones, Paonessa, and Babu, but rather on these Defendants' own actions and inactions that proximately caused Mr. Galley's death.

As with the federal claims, their state law liability is based on their personal actions and inactions in connection with their training and supervision of employees, the policies and customs they oversaw or failed to implement despite an obvious need, and their failures to execute the clear mandates of the *May* Consent Decree, leading directly to Mr. Galley's death.  Their state law liability is also based on their conduct that "set[] in motion a serious of acts by others … which the supervisor knew or reasonably should have known would cause others to inflict [an injury]."  *Starr*, 652 F.3d at 1208-09.

Plaintiffs' claims against Defendants Jones, Paonessa, and Babu are based on their own failures to reasonably staff, train, and supervise jail deputies and health care personnel tasked with screening, admitting, observing, monitoring, and protecting inmates and detainees like Mr. Galley.  (See FAC, ¶33). Plaintiffs allege Defendants Jones Paonessa, and Babu were each responsible for the overall provision of all custody and medical services at the Sacramento County Main jail, including staffing, hiring, training and supervision.  (FAC ¶46).  Plaintiffs further allege that these Defendants knew, based on the *Mays* monitoring reports, that jail medical staff were not consistently and properly screening new inmates for

alcohol withdrawal, with grave, life-threatening risks to inmates, and that they knew that the cause of such blatantly inadequate and deliberately indifferent medical screening was due, in part, to severe over-crowding of the jail and inadequate staffing, training, and supervision of medical and custody personnel over which these Defendants had control.  (FAC ¶ 53).  Plaintiffs further allege that Defendants Jones, Paonessa, and Babu allowed custody and medical staffing shortages at the main jail at the time that jail medical staff failed to properly screen, assess, and treat Mr. Galley -- in violation of generally accepted standards and the *May* Consent Decree -- and such staffing shortages were a cause of the jail's delay and denial of medical care for Mr. Galley's serious medical needs.  *Id.*  These Defendants knew or should have known of the widespread failures of jail and medical staff to adhere to both national clinical standards concerning alcohol and other drug detoxification protocols and the County's own written policies concerning alcohol and other drug detoxification protocols, and failed to intervene to deter continued violations of those protocols.  *Id*.

Paragraph 50 of the FAC includes additional allegations against Defendants Jones, Paonessa, and Babu based on their own acts or omissions:

> Defendants Sheriff JONES, Commander PAONESSA, Medical Director BABU, and DOES 1-20, as well as other employees or officers employed by or acting on behalf of Defendant COUNTY, each set in motion, permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of MR. GALLEY. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinates from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights. All such conduct was ministerial and not discretionary. Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' obvious and apparent violations of Decedent's rights.

FAC ¶ 50.

Defendants Jones, Paonessa, and Babu's actions proximately caused Mr. Galley's death based on their own conduct as policy-making officials, not vicarious liability.  See *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) (section 820.8 inapplicable where plaintiffs did not rely on

claim of supervisors' vicarious liability, but rather "on the supervisors' culpable action or inaction that proximately caused their injuries."); *J.M. v. Parlier Unified Sch. Dist.*, No. 1:21-CV-0261-AWI-BAM, 2021 U.S. Dist. LEXIS 218277, at *9-10 (E.D. Cal. Nov. 10, 2021) ("Section 820.8 has been held to be inapplicable to claims against a supervisor for his own improper or negligent supervision and training.").

### F.  Plaintiffs Have Sufficiently Pleaded Claims Under the ADA and RA

Title II of the ADA and § 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  The ADA also requires public entities to make reasonable accommodations to disabled individuals.  Section 504 of the RA extends these protections to "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794;

Title II of the ADA was expressly modeled after § 504 of the RA, and there is "no significant difference in analysis of the rights and obligations created by the ADA and the [RA]."  *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999)

Both the ADA and the RA apply in the context of correctional facilities, and both prohibit disabled inmates from being excluded from participation in inmate services, programs, or activities, including medical programs.  See *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) (explaining that the ADA and RA apply in the context of correctional facilities); see also *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (acknowledging that the phrase "services, programs, or activities" as used in 42 U.S.C. § 12132 includes medical programs in prison).

**Under Title II of the ADA and the RA, the public entity is vicariously liable for the acts of its employees and agents.**  See *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (ADA Title II claims); *Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988) (RA claims).

To establish a violation of Title II of the ADA, "the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability."  *Cohen*

1   *v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).

2        Plaintiffs allege that the County violated Mr. Galley's rights under the ADA and RA in three ways

3   as alleged in ¶ 92 of the FAC: (1) by fully excluding Mr. Galley from participation in the

4   COUNTY's services, programs, or activities for jail inmates with substance use disorders such as

5   alcohol dependence; and/or (2) by otherwise discriminating against MR. GALLEY with regard to the

6   COUNTY's services, programs, or activities for jail inmates with substance use disorders such

7   as alcohol dependence; and/or (3) by denying MR. GALLEY -- as a jail inmate deprived of the

8   ability to secure his own medical care and treatment -- reasonable modifications or accommodations

9   for his substance use disorders, including alcohol dependence and risk of severe and life-threatening

10  alcohol withdrawal.

11       Defendants do not dispute that Mr. Galley qualified as disabled under the ADA and RA, or that

12  the County is a public entity subject to ADA and RA requirements.  Notably, Defendants also do not

13  challenge the sufficiency of the pleadings as to Plaintiffs' reasonable accommodation theory under the

14  ADA/RA.  Defendants challenge whether Plaintiffs sufficiently alleged that Mr. Galley was excluded

15  from or denied access to medical treatment because of his alcohol dependency, i.e., his disability.

16       **1.   Plaintiffs Plausibly Pleaded that Mr. Galley Was Completely Denied Access to
          Medical Services Because of his Disability**

17       "[A]n inmate cannot be categorically excluded from a beneficial prison program."  *Pierce v. Cnty.*

18  *of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008).  "The ADA may be violated where there is an outright

19  denial of medical services because the complete lack of access to services may be so unreasonable as to

20  demonstrate that they were discriminating against [the plaintiff] because of his disability."  *Anderson v.*

21  *Cnty. of Siskiyou*, No. C 10-01428 SBA, 2010 U.S. Dist. LEXIS 99927, at *15 (N.D. Cal. Sept. 13, 2010).

22  The Court in *Atayde v. Napa State Hospital*, E.D. Cal. Case No. 1:16-cv-00398-ADA-SAB adopted that

23  holding as well:

24       Although courts have not clearly articulated the standard applicable to a situation such as
         the one at issue in this case, where the decedent was completely denied treatment by
25       defendant NSH, courts are in general agreement that an outright denial of medical care—
         including mental health care—can lead a jury to reasonably infer that the denial was so
26       arbitrary and capricious that there must have been a discriminatory motive. See *Kiman v.*
         *New Hampshire Dep't of Corr.*, 451 F.3d 274, 285–87 (1st Cir. 2006) (finding a triable
27       issue of fact as to whether the defendant violated the ADA by failing to provide the

28

plaintiff access to his medications, because this "outright denial of medical services" was "so unreasonable as to demonstrate that they were discriminating against him because of his disability").

The County completely excluded Mr. Galley from participation in its services and programs for alcohol-dependent inmates. Plaintiffs specifically allege that Mr. Galley's disability, his alcohol-dependance, caused him to be completely denied of any benefits, medical, or other services, or accommodations for his disability, thereby placing him at a more acute risk of harm and death than non-disabled inmates. (FAC ¶93).

### 2. Plaintiffs Plausibly Pleaded that the County Discriminated Against Mr. Galley Because of his Disability

A plaintiff may allege disability discrimination by pleading "either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017); See also *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (recognizing that disparate impact claims are cognizable under Title II); *Payan v. L.A. Cmty. College Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (same, holding that limits on enforceability of disparate impact claims under Title VI of the Civil Rights Act are inapplicable to the ADA). "A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim." *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004)).

The Court in *Atayde* explained:

To plead disparate treatment under the ADA or RA, a plaintiff must allege that other non-disabled individuals without plaintiff's disability were treated more favorably…. To plead disparate impact, a plaintiff must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons…. Finally, to plead a failure to accommodate under the ADA or RA, a plaintiff must allege that a public entity knew of plaintiff's disability but failed to provide reasonable accommodations…. A correctional facility's "deliberate refusal" to accommodate plaintiffs' disability-related needs violates the ADA and the RA.

*Atayde*, 255 F.Supp.3d at 1001 (citations omitted).

Plaintiffs specifically allege that following:

The COUNTY discriminated against MR. GALLEY by failing to place him in a setting, and/or failing to provide appropriate services, to reasonably address his disability and disability-related medical needs. Defendant COUNTY thereby subjected MR. GALLEY to both disparate treatment and disparate impact based on his disability class as a substance

1
2

addicted person at risk for severe and life-threatening withdrawal. Defendant COUNTY's failure to reasonably address MR. GALLEY's disability and disability-related medical needs caused him to suffer greater injury and indignity in his incarceration in the County Jail than other non-disabled inmates and pretrial detainees.

3

4

FAC ¶ 94.

5

6

Defendants contend, in reliance on *Simmons v. Navajo County*, 609F.3d 1011, 1022 (June 23, 2010), that Plaintiffs' allegations are based on inadequate treatment for Mr. Galley's disabilities, and not discrimination because of his disability, and thus do not state a claim under the ADA or RA.  However, the plaintiff in *Simmons* complained that he was deprived of programs or activities to lessen his disability (depression) and the court held that such an argument was not actionable under the ADA.  *Id.* at 1022.  Here, Plaintiffs allege that because of Mr. Galley's disability he was effectively treated less-favorably that non-disabled inmates.  See *Eaton v. Two Rivers Corr. Inst. Griev. Coordinator,* No. 2:20-cv-1251-SI, 2020 U.S. Dist. LEXIS 235446, *5, 18 (D. Or. Dec. 15, 2020) (denying motion to dismiss ADA claim where plaintiff with asthma and COPD alleged that black mold in showers posed a more substantial injury to him than non-disabled prisoners.)

7

8

9

10

11

12

13

14

15

### 3.   Plaintiffs Plausibly Pleaded that the County Failed to Provide Mr. Galley With Reasonable Accommodations for his Known Disability

16

17

To plead a failure to accommodate theory under the ADA or RA, a plaintiff must allege that a public entity knew of plaintiff's disability but failed to provide reasonable accommodations.  *Robertson v. Las Animas Cty. Sherriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007).  The duty to provide accommodation to a disabled person under Title II is also triggered where the need for accommodation is obvious or required by law.  *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001).  "When the plaintiff has alerted the public entity to his need for accommodation (**or where the need for accommodation is obvious, or required by statute or regulation**), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test."  *Id*. (emphasis added).  To meet the second prong, the entity's failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness."  *Id*.  See *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[T]he alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually

18

19

20

21

22

23

24

25

26

27

28

all other prison programs constituted [an ADA violation]." (internal quotation omitted)); see also *Pierce*, 526 F.3d at 1221 ("[A]n inmate cannot be categorically excluded from a beneficial prison program.").

Although not disputed by Defendants, it was obvious that Mr. Galley needed accommodations to avoid subjecting him to serious risk of harm or death from alcohol withdrawal. (FAC ¶ 91). Obvious accommodations for Mr. Galley's disability would have included, among others:

> [P]lacing Mr. Galley on detoxification and withdrawal protocols; having qualified medical staff conduct CIWA assessments on Mr. Galley every 4 to 6 hours for at least five days; placing MR. GALLEY on a vitamin regimen, including vitamins such as thiamine, folic acid, and multivitamins; requiring jail and/or medical staff to conduct visual observations of MR. GALLEY multiple times per day; and placing MR. GALLEY on a fixed-dose medication treatment regimen (also known as a "front-loading regimen") for alcohol withdrawal, rather than symptom- triggered treatment, <u>just as the Court Experts appointed in *Mays* had advised Defendant COUNTY on multiple previous occasions, due to Defendant COUNTY's repeated failures to properly monitor inmates and pretrial detainees like Mr. Galley for alcohol and other substance withdrawal.</u> Defendant COUNTY failed to provide any accommodations for MR. GALLEY's alcohol dependence and risk of severe and deadly alcohol withdrawal.

(FAC ¶ 95).

Plaintiffs plausibly pleaded that Defendants completely denied, or otherwise intentionally discriminated against Mr. Galley and that he had an obvious need for reasonable accommodations for his risk of and life-threatening alcohol withdrawal. "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018)

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the FAC should be denied in its entirety.

Dated:  June 16, 2023                    HADDAD & SHERWIN LLP

                              By:    /s/ *Teresa Allen*
                                     TERESA ALLEN
                                     Attorneys for Plaintiffs