1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10                             ----oo0oo----

11

12   ANTHONY GALLEY, Deceased, by and          No. 2:23-cv-00325 WBS AC
     through his Co-Successors in
13   Interest, P.P. and B.P., minors,
     through their mother and Next
14   Friend, Christina O'Neil,                  MEMORANDUM AND ORDER RE:
     Individually and as Co-                    COUNTY DEFENDANTS' MOTION TO
15   Successors in Interest for                 DISMISS
     ANTHONY GALLEY, Deceased,
16
                      Plaintiffs,
17
            v.
18
     COUNTY OF SACRAMENTO, a public
19   entity; FORMER SACRAMENTO COUNTY
     SHERIFF SCOTT R. JONES, in his
20   individual capacity; Jail
     Commander ANTHONY PAONESSA; Jail
21   Medical Director VEER BABU,
     M.D.; MAXIM HEALTHCARE SERVICES,
22   INC. dba MAXIM STAFFING
     SOLUTIONS, a Maryland
23   Corporation; MAXIM HEALTHCARE
     STAFFING SERVICES, Inc., a
24   Maryland Corporation; ERICA
     WOODS, R.N.; and DOES 1-20;
25   individually, jointly, and
     severally,
26
                      Defendants.
27

28
                                    1

----oo0oo----

P.P. and B.P., the minor children of decedent Anthony Galley, bring this action against the County of Sacramento, Former Sacramento County Sheriff Scott Jones, Jail Commander Anthony Paonessa, and Jail Medical Director Doctor Veer Babu (collectively the "County Defendants"), as well as Maxim Healthcare Services, Inc., Maxim Healthcare Staffing Services, Inc., and Nurse Erica Woods (collectively the "Medical Defendants"), for violations of both federal and state law in connection with Mr. Galley's death while detained in the Sacramento County Jail.  (See generally First Am. Compl. (Docket No. 20).)

Plaintiffs assert claims for deliberate indifference to serious medical need and wrongful interference with familial relationships under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Claim 1); Monell liability under 42 U.S.C. § 1983 (Claim 2); the Tom Bane Act, Cal. Civ. Code § 52.1 (Claim 3); negligence (Claim 4); failure to furnish or obtain medical care for prisoner, Cal. Gov. Code § 845.6 (Claim 6); Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act (the "Rehab Act"), 29 U.S.C. § 794 (Claim 7).[1]  (See id.)

Before the court is the County Defendants' motion to dismiss.  (Mot. (Docket No. 23).)

---

[1]    The First Amended Complaint appears to misnumber plaintiffs' claims, as there is no fifth claim.  Thus, while there are seven labeled claims, plaintiffs in fact only bring six claims.  To prevent confusion, this order will refer to the claims as they are labeled in the First Amended Complaint.

I.    <u>Factual Allegations</u>[2]

     Decedent Anthony Galley was the 37-year-old father of P.P. and B.P.  (First Am. Compl. ¶ 21.)  He had a longstanding history of alcohol, heroin, and benzodiazepine addition.  (<u>Id.</u> ¶ 24.)  He also had previously been detained in the Sacramento County Jail.  (<u>Id.</u>)  During these previous periods of detention, Mr. Galley informed jail staff of his alcohol and drug dependence.  (<u>Id.</u>)  He also informed staff of his history of serious drug and alcohol withdrawal symptoms, including seizures.  (<u>Id.</u>)  As a result of his alcoholism and withdrawal history, Mr. Galley was always placed on detoxification and withdrawal protocols.  (<u>Id.</u>)  This information is reflected in Mr. Galley's jail medical records.  (<u>Id.</u>)

     On or about February 13, 2022, Mr. Galley was arrested and brought to the Sacramento County Jail.  (<u>Id.</u> ¶ 22.)  During intake, he was medically screened by Nurse Erica Woods.  (<u>Id.</u> ¶ 23.)  Mr. Galley informed Nurse Woods that he had used alcohol within the last 24 hours, had a history of alcohol use, and had a history of alcohol withdrawal, along with other information about his history of alcoholism.  (<u>Id.</u>)

     As a result of Mr. Galley's self-reporting and his prior jail medical records, Nurse Woods was allegedly required to put Mr. Galley on immediate detoxification and alcohol withdrawal protocols, which include repeated monitoring and assessments.  (<u>Id.</u> ¶ 25.)  However, Nurse Woods did not put Mr. Galley into these protocols.  (<u>Id.</u>)

---

[2]    The court takes the allegations of the First Amended Complaint as true.

1    Mr. Galley requested to be seen by jail medical staff
2    but was informed that, since he had already been seen at intake,
3    he could not be seen again until after processing.  (Id. ¶ 27.)
4    Mr. Galley was then placed in an upstairs jail housing unit.
5    (Id.)

6    Two days later, Mr. Galley suffered a seizure in a room
7    where he and other inmates had been brought to wait for their
8    classification interviews.  (Id.)  The other inmates attempted to
9    get the attention of jail house staff.  (Id.)  Despite their
10   attempts to do so, including banging on the windows and screaming
11   for help, approximately thirty minutes elapsed between Mr.
12   Galley's seizure and the arrival of any jail deputies.  (Id.)

13   Two jail nurses took Mr. Galley's vitals and
14   administered Narcan, and deputies performed CPR and utilized an
15   Automated External Defibrillator.  (Id. ¶ 28.)  The Sacramento
16   Fire Department arrived approximately ten minutes after the
17   deputies responded to the inmates call for help.  (Id.)  The Fire
18   Department brought Mr. Galley to a nearby hospital where he was
19   pronounced dead.  (Id.)

20   As a result of Mr. Galley's death and plaintiffs'
21   inability to access information concerning his death, such as his
22   jail custody records and autopsy photos, P.P. and B.P. initiated
23   this lawsuit.  (Id. ¶ 30.)

24   II.  Legal Standard

25   Federal Rule of Civil Procedure 12(b)(6) allows for
26   dismissal when the plaintiff's complaint fails to state a claim
27   upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).
28   The inquiry before the court is whether, accepting the

1   allegations in the complaint as true and drawing all reasonable

2   inferences in the plaintiff's favor, the complaint has alleged

3   "sufficient facts . . . to support a cognizable legal theory,"

4   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001), and thereby

5   stated "a claim to relief that is plausible on its face," Bell

6   Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding

7   such a motion, all material allegations of the complaint are

8   accepted as true, as well as all reasonable inferences to be

9   drawn from them.  Id.

10  III. Discussion

11          In their motion to dismiss, the County Defendants

12  advance four arguments: (1) plaintiffs lack standing; (2) the

13  County Defendants are immune from liability under various state

14  laws; (3) plaintiffs' Tom Bane Act claim, as alleged, fails

15  because plaintiffs did not allege any facts showing the County

16  Defendants had the "specific intent" to deprive Mr. Galley of

17  medical care; and (4) plaintiffs' ADA and Rehab Act claim fails

18  as a matter of law because plaintiffs did not allege any facts

19  showing the County Defendants discriminated against Mr. Galley

20  because of his disability.  (See generally Mot.)  The court will

21  address each argument below.

22      A.   Standing

23          The County Defendants argue that P.P. and B.P. do not

24  have standing because they did not seek appointment of a court

25  approved guardian ad litem under Local Rule 202.  (Mot. at 3-4.)

26  Local Rule 202 provides:

27          Upon commencement of an action or upon initial
            appearance in defense of an action by or on behalf of a
28          minor or incompetent person, the attorney representing

5

1

2

3

4

5

the minor or incompetent person shall present (1) appropriate evidence of the appointment of a representative for the minor or incompetent person under state law or (2) a motion for the appointment of a guardian ad litem by the Court, or, (3) <u>a showing satisfactory to the Court that no such appointment is necessary to ensure adequate representation of the minor</u> or incompetent person.

6   L.R. 202 (emphasis added) (citing Fed. R. Civ. P. 17(c)).

7           Federal Rule of Civil Procedure 17(c)(2) permits a

8   minor "who does not have a duly appointed representative [to] sue

9   by a next friend . . . ."  In order to satisfy "next friend"

10  standing, a "next friend" must: (1) "provide an adequate

11  explanation -- such as inaccessibility, mental competence, or

12  other disability -- why the real party in interest cannot appear

13  on his own behalf . . ."; and (2) "be truly dedicated to the

14  interests of the person on whose behalf he seeks to litigate."

15  <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 163-64 (1990) (citations

16  omitted); <u>see also</u> <u>Coalition of Clergy v. Bush</u>, 310 F.3d 1153,

17  1159-60 (9th Cir. 2002).  The "next friend" should "have some

18  significant relationship with the real party in interest."

19  <u>Whitmore</u>, 495 U.S. at 164 (citations omitted).  "The burden is on

20  the 'next friend' clearly to establish the propriety of his

21  status and thereby justify the jurisdiction of the court."  <u>Id.</u>

22  (citations omitted).

23          Here, minor plaintiffs P.P. and B.P.'s "next friend" is

24  Christina O'Neil.  As Ms. O'Neil stated in her co-successor in

25  interest declarations filed on behalf of her minor children, she

26  is the minor plaintiffs' mother and legal guardian until they

27

28

1    reach the age of eighteen.[3]  (See Docket Nos. 7, 8.)  As both

2    their mother and legal guardian, the court believes that Ms.

3    O'Neil will "be truly dedicated to the interests of" the minor

4    plaintiffs.  See Whitmore, 495 U.S. at 163-64 (citations

5    omitted).  The court is therefore satisfied that the appointment

6    of a guardian ad litem is not "necessary to ensure adequate

7    representation of the minor[s]."  See L.R. 202.  Accordingly, the

8    court will reject the motion to dismiss for lack of standing.[4]

9         B.   Immunity

10        The County Defendants advance three arguments that they

11   are immune from liability under various state laws: (1) the

12   County is immune from direct liability under Cal. Gov. Code §

13   844.6(a)(2); (2) Jones, Paonessa, and Babu are immune from

14   liability for negligence because their conduct constitutes

15   "discretionary acts" under Cal. Gov. Code § 820.2; and (3) Jones,

16   Paonessa, and Babu are immune from being held vicariously liable

17   for negligence under Cal. Gov. Code § 820.8.  (Mot. at 5, 8-11.)

18   As explained below, the court rejects all three arguments.

19        1.   Immunity From Direct Liability

20        Plaintiffs assert two state law claims directly against

21   the County: the Tom Bane Act, Cal. Civ. Code § 52.1 (Claim 3),

22   and Cal. Gov. Code § 845.6 (Claim 6).[5]  First, a Bane Act claim

23   —————————————

24        [3]    P.P. and B.P. are 14 years old and 8 years old,
     respectively.  (First Am. Compl. ¶¶ 3, 4.)

25        [4]    The court also denies defendants' request to alter the
26   caption of the First Amended Complaint and the docket (see Mot.
     at 4), which already indicates that P.P. and B.P. are the sole
27   plaintiffs.

28        [5]    County Defendants also contend that plaintiffs cannot

1    may be brought directly against a municipality.  See Sanchez v.

2    City of Fresno, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012)

3    (O'Neill, J.) ("[S]everal federal courts interpreting the [Bane

4    Act] have concluded municipalities do fall within its purview");

5    see also id. (collecting cases); Spath v. Cnty. of Santa Clara, -

6    -- F. Supp. 3d ---, 2023 WL 2989042, at *7 (N.D. Cal. Apr. 17,

7    2023) (citations omitted).  Thus, plaintiffs may assert a Bane

8    Act claim directly against a municipality.  The court will

9    address the County Defendants' other arguments against

10   plaintiffs' Bane Act claim in a later section below.

11          Second, Cal. Gov. Code § 845.6 ("failure to furnish or

12   obtain medical care for prisoner") is a statutory exception to

13   immunity.  See Cal. Gov. Code § 844.6(a)(2) ("Notwithstanding any

14   provision of this part, except as provided in this section and in

15   Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1

16   (commencing with Section 35000) of Part 3 of the Penal Code, a

17   public entity is not liable for . . . [a]n injury to any

18   prisoner.")  Under Cal. Gov. Code § 845.6, a public entity may be

19   held liable for a failure to summon medical care but may not be

20   held liable for negligence in providing care.  See Castaneda v.

21   Dep't of Corrs. & Rehab., 212 Cal. App. 4th 1051, 1071 (2nd Dist.

22   2013) (finding § 845.6 did not apply, and thus the state was

23   immune, where plaintiff sustained injuries because of a decision

24   to not give him a biopsy while in custody) (citation omitted).

25   _____

26   plead negligence or wrongful death claims against the County
     based on inadequate staffing, facilities, or services.  (Mot. at
27   5.)  However, plaintiffs do not bring negligence or wrongful
     death claims against the County.  (See First Am. Compl. ¶¶ 36,
28   71.)

1    Because plaintiffs seek to hold the County Defendants
2    liable for failure to summon medical care, as opposed to
3    negligence in providing care, the statutory immunity provision in
4    § 845.6 does not apply.  Thus, plaintiffs may assert a claim
5    under Cal. Gov. Code § 845.6 directly against the County.

6              2.   Immunity Under Cal. Gov. Code § 820.2

7    Cal. Gov. Code § 820.2 provides that "a public employee
8    is not liable for an injury resulting from his act or omission
9    where the act or omission was the result of the exercise of the
10   discretion vested in him, whether or not such discretion be
11   abused."  To determine whether discretionary immunity applies,
12   courts must "distinguish between public employees' policy
13   decisions and their operational, or ministerial, decisions." AE
14   ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 639 (9th Cir.
15   2012) (citing Barner v. Leeds, 24 Cal. 4th 676, 684-85 (2000)).
16   While "[q]uasi-legislative decisions" receive immunity, "there is
17   no basis for immunizing lower level decisions that merely
18   implement a basic policy already formulated." Id. (citation and
19   internal quotations omitted).  "[G]overnment defendants have the
20   burden of establishing that they are entitled to immunity for an
21   actual policy decision made by an employee who 'consciously
22   balance[ed] risk and advantages." Id.  (citation and quotations
23   omitted).

24   The County Defendants argue that because Jones,
25   Paonessa, and Babu possessed discretionary responsibilities
26   inherent in their respective positions, they are immune under
27   Cal. Gov. Code § 820.2 and, because they are immune, the County
28   is immune under Cal. Gov. Code § 815.2.  (Mot. at 9.)  The court

1   disagrees.  "The fact that an employee normally engages in

2   'discretionary activity' is irrelevant if, in a given case, the

3   employee did not render a considered decision."  <u>AE</u>, 666 F.3d at

4   639 (citation and quotations omitted).  Nothing in either the

5   County Defendants' motion or the First Amended Complaint suggests

6   that any of these individual defendants "consciously balance[ed]

7   risk and advantages" in any decisions related to Mr. Galley's

8   death.  <u>See id.</u>  The County Defendants failed at this stage of

9   the proceeding to sustain their burden and, therefore, the court

10  will not dismiss the state claims against the individual

11  defendants under § 820.2.[6]

12          3.   <u>Immunity Under Cal. Gov. Code § 820.8</u>

13          Cal. Gov. Code § 820.8 provides that "a public employee

14  is not liable for an injury caused by the act or omission of

15  another person."  Here, however, plaintiffs allege that Jones,

16  Paonessa, and Babu are liable because of their personal conduct.

17  (<u>See</u> Opp'n at 14.)  Plaintiffs thus do not rely on vicarious

18  liability.  Therefore, Cal. Gov. Code § 820.8 does not apply.

19  <u>See Rodriguez v. Cnty. of L.A.</u>, 891 F.3d 776, 799 (9th Cir. 2018)

20  ("§ 820.8 is inapplicable because . . . appellees do no rely on

21  vicarious liability, but, rather, rely on the supervisors'

22  culpable action or inaction that proximately caused their

23  injuries."); <u>J.M. v. Parlier Unified Sch. Dist.</u>, No. 1:21-cv-0261

24  AWI BAM, 2021 WL 5234770, at *3 (E.D. Cal. Nov. 10, 2021) ("§

---

25          [6]   Because Jones, Paonessa, and Babu are not entitled to
26  immunity under Cal. Gov. Code § 820.2, the County is not entitled
    to immunity under Cal. Gov. Code § 815.2(b).  <u>See</u> Cal. Gov. Code
27  § 815.2(b) ("[A] public entity is not liable for an injury
    resulting from an act or omission of an employee of the public
28  entity where the employee is immune from liability.").

1    820.8 does not apply because the claims against [defendant] are

2    based on his own supervision and negligence.").

3          For the reasons explained above, the court finds that

4    the County Defendants are not immune from liability under

5    California state law.  Accordingly, the court will deny the

6    motion to dismiss on immunity grounds.

7          C.   Tom Bane Act[7] (Claim 3)

8          A Tom Bane Act claim requires specific intent to

9    violate the plaintiff's rights.  Reese v. Cnty. of Sacramento,

10   888 F.3d 1030, 1043 (9th Cir. 2018) ("[T]he Bane Act requires . .

11   . a specific intent to violate the arrestee's right to freedom

12   from unreasonable seizure.") (citing Cornell v. City & Cnty. of

13   S.F., 17 Cal. App. 5th 766, 801 (1st Dist. 2017)).  "[S]pecific

14   intent" may be shown by demonstrating that the officer "acted . .

15   . 'in reckless disregard of constitutional or statutory

16   prohibitions or guarantees.'"  See Cornell, 17 Cal. App. 5th at

17   803-04 (citation omitted); Reese, 888 F.3d at 1045 ("[A] reckless

18   disregard for a person's constitutional rights is evidence of a

19   specific intent to deprive that person of those rights.").

20          [7]    Plaintiffs assert their Bane Act claim as both a
     wrongful death action and a survival action.  (First Am. Compl. ¶
21   65.)  A Bane Act claim cannot be brought as a wrongful death
     claim.  See Bay Area Rapid Transit Dist. v. Superior Court, 38
22   Cal. App. 4th 141, 141 (1st Dist. 1995) (holding that "the [Tom]
     Bane Act is simply not a wrongful death provision" but "clearly
23   provides for a personal cause of action for the victim").
     However, a claim under the Bane Act can be brought for survival
24   actions.  See Medrano v. Kern Cnty. Sheriff's Off., 921 F. Supp.
     2d 1009, 1016 (E.D. Cal. 2013) (Ishii, J.); D.G. v. Cnty. of
25   Kern, 1:15-cv-0760 JAM JLT, 2016 WL 6072362, at *1 (E.D. Cal.
     Oct. 13, 2016); Harmon v. Cnty. of Sacramento, Case No. 2:12-cv-
26   02758 TLN, 2016 WL 319232, at *15-16 (E.D. Cal. Jan. 27, 2016);
     Dela Torre v. City of Salinas, Case No. C-09-00626 RMW, 2010 WL
27   3753762, at *7 (N.D. Cal. Sep. 17, 2010).
28

                                    11

1    The County Defendants argue that plaintiffs' Bane Act

2   claim must be dismissed because plaintiffs did not allege the

3   County Defendants had the "specific intent" to deprive Mr. Galley

4   of medical care.  (Mot. at 8.)  They also argue that plaintiffs'

5   Bane Act claim fails because there are no allegations that any

6   County Defendants were present during Mr. Galley's detention or

7   had any specific knowledge of Mr. Galley's medical state.  (Id.)

8   The court rejects both arguments.

9    First, multiple district courts have adopted the

10   position that "a prisoner who successfully proves that prison

11   officials acted or failed to act with deliberate indifference to

12   his medical needs . . . adequately states a claim for relief

13   under the Bane Act."  M.H. v. Cnty. of Alameda, 90 F. Supp. 3d

14   889, 899 (N.D. Cal. 2013) (cited with approval by Cornell, 17

15   Cal. App. 5th at 802 n. 31).  See, e.g., Scalia v. Cnty. of Kern,

16   308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) (O'Neill, J.);

17   Lapachet v. Cal. Forensic Med. Grp., Inc., 313 F. Supp. 3d 1183,

18   1195 (E.D. Cal. 2018) (Drozd, J.); Estate of Neil v. Cnty. of

19   Colusa, No. 2:19-cv-4291745 TLN DB, 2022 WL 4291745, at *9 (E.D.

20   Cal. Sep. 16, 2022); Polanco v. California, No. 21-cv-06516 CRB,

21   2022 WL 1539784, at *4 (N.D. Cal. May 16, 2022); Shoar v. Cnty.

22   of Santa Clara, No. 22-cv-00799 WHA, 2022 WL 10177673, at *3

23   (N.D. Cal. Oct. 17, 2022).  Second, several courts have held that

24   a Bane Act claim can be based on supervisory conduct.  See

25   Johnson v. Baca, No. 13-cv-04496 MMM, 2014 WL 12588641, at *16

26   (C.D. Cal. Mar. 3, 2014) (collecting cases); Neuroth v. Mendocino

27   Cnty., No. 15-cv-03226-NJV, 2016 WL 379806, at *7 (N.D. Cal. Jan.

28   29, 2016).

1    Claims for violations of the right to adequate medical

2    care brought by pretrial detainees against individual defendants

3    under the Fourteenth Amendment must be evaluated under an

4    objective deliberate indifference standard.[8]  See Gordon v. Cnty.

5    of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018).  Pretrial

6    detainees alleging that jail officials failed to provide

7    constitutionally adequate medical care must show:

8            (1) The defendant made an intentional decision
             with respect to the conditions under which
9            plaintiff was confined [including a decision with
             respect to medical treatment];
10
             (2) Those conditions put the plaintiff at
11           substantial risk of suffering serious harm;

12           (3) The defendant did not take reasonable
             available measures to abate that risk, even
13           though a reasonable official in the circumstances
             would have appreciated the high degree of risk
14           involved -- making the consequences of the
             defendant's conduct obvious; and
15
             (4) By not taking such measures, the defendant
16           caused plaintiff's injuries.

17   Id. at 1125.

18           Here, in support of their Bane Act claim, plaintiffs

19   allege, for example, that the County Defendants were deliberately

20   indifferent by "[m]aking the conscious choice not to consistently

21   provide the required observation for inmates at high risk of

22   alcohol withdrawal" and "instituting and maintaining the

23   [County's] customs, policies and practices."  (First Am. Compl. ¶

24   
_____

25       [8]   This standard is different from the inquiry applicable
     to convicted detainees arising under the Eighth Amendment.  The
26   inquiry under the Eighth Amendment involves a subjective
     standard.  See Gordon, 888 F.3d 1118, n.4 (9th Cir. 2018)
27   (explaining that the Eighth Amendment standard requires that the
     "prison official must subjectively have a culpable state of
28   mind").

13

64).  Although plaintiffs only assert their Fourteenth Amendment deliberate indifference claim against the Medical Defendants (see FAC ¶¶ 36-44), the court finds such allegations sufficient to support a Bane Act claim for deliberate indifference to serious medical needs.  See M.H., 90 F. Supp. 3d at 899 ("[A] prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim under the Bane Act.").  Accordingly, the court will deny the motion to dismiss the Bane Act claim as asserted against the County Defendants.

        D.   <u>ADA and Rehab Act</u> (Claim 7)

        The County Defendants argue that plaintiffs' claims under the ADA and the Rehab Act fail as a matter of law because plaintiffs did allege any facts showing the County Defendants discriminated against Mr. Galley because of his disability.[9] (Mot. at 11.)  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discrimination against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002).  "To establish a

---

[9]    Alcoholism may be considered a disability.  See 28 C.F.R. § 35.108(b)(2) (including "alcoholism" within the definition of "disability" as a "physical or mental impairment").  The County Defendants do not challenge Mr. Galley's status as a disabled person, and thus the court will assume Mr. Galley has a disability under the ADA and Rehab Act for purposes of deciding this motion.

1   violation of § 504 of the [Rehab Act], a plaintiff must show that

2   (1) [he] is handicapped within the meaning of the [Rehab Act];

3   (2) [he] is otherwise qualified for the benefit or services

4   sought; (3) [he] was denied the benefit of services solely by

5   reason of [his] handicap; and (4) the program providing the

6   benefit receives federal financial assistance." Id.[10]

7          To allege disability discrimination in the provision of

8   inmate services, a plaintiff can plead "either (i) discrimination

9   based on disparate treatment or impact, or (ii) denial of

10  reasonable modifications or accommodations." Atayde v. Napa

11  State Hosp., 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (Drozd,

12  J.) (citing Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075,

13  1086 (9th Cir. 2004)) (additional citation omitted).  To plead a

14  failure to accommodate claim, as plaintiffs do here, "a plaintiff

15  must allege that a public entity knew of plaintiff's disability

16  but failed to provide reasonable accommodations." See id. at

17  1001 (citation omitted); see also id. at 1003 ("[A] public entity

18  must have knowledge of the individual's disability in order to be

19  liable under the ADA for failure to accommodate.") (quoting

20  Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185,

21  1196 (10th Cir. 2007)) (internal quotations omitted).

22         Here, plaintiffs allege that Mr. Galley's jail medical

23  records from his previous detentions included information

24         [10]   The court will apply the same analysis to the ADA and
25  Rehab Act claim.[10]  See Martin v. Cal. Dep't of Veterans Affs.,
    560 F.3d 1042, 1047 n.7 (9th Cir. 2009) ("Because '[t]here is no
    significant difference in analysis of the rights and obligations
26  created by the ADA and the Rehabilitation Act,' we have
    consistently applied 'the same analysis to claims brought under
27  both statutes,' . . . and again do so here.") (citing Zukle v.
    Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir.
28  1999)).

                                    15

1 regarding his alcoholism and history of severe withdrawals as

2 well as the fact he was placed on detoxification and withdrawal

3 protocols during these previous detentions.  (First Am. Compl. ¶

4 24.)  Plaintiffs further allege that defendants had knowledge of

5 Mr. Galley's disability because he self-reported his condition to

6 Nurse Woods during his initial screening.  (Id. ¶ 23.)  Moreover,

7 plaintiffs allege that the County Defendants were or should have

8 been aware of the jail's well-known history of failing to

9 properly monitor pretrial detainees for alcohol withdrawal.[11]

10 (Id. ¶¶ 47-51, 95.)  The court thus finds plaintiffs have alleged

11 facts sufficient to support a failure to accommodate claim.

12        In their Reply, defendants contend that plaintiffs'

13 allegations only show negligence and thus are insufficient to

14 support a claim under the ADA and the Rehab Act.  (Reply at 6.)

15 Defendants are correct that "courts . . . distinguish[] between

16 claims asserted under the ADA that allege that the medical

17 treatment that a plaintiff received or had access to was

18 inadequate, [and] claims alleging that a plaintiff was

19 discriminatorily precluded from access to medical treatment

20 altogether."  Atayde, 255 F. Supp. 3d at 1004 (citation and

---

21      [11]   As explained by plaintiffs, Mays v. Sacramento County,
22 2:18-cv-02081 TLN KJN (E.D. Cal.) was a class action lawsuit
   challenging the conditions in Sacramento County jails.  (First
23 Am. Compl. ¶ 47 n.1.)  The settlement adopted (the "Mays Consent
   Decree") required the County to, among other things, issue
24 monitoring reports.  (Id.)  These monitoring reports all discuss
   Sacramento County jails' failure to address withdrawal.  (See id.
25 ¶¶ 47-51.)  The Third Monitoring Report, from October 2022,
   specifically discussed Mr. Galley's death, describing the
26 incident as "represent[ing] a profound failure to recognize,
   monitor and treat a patient at risk of severe alcohol withdrawal.
27 The patient was not evaluated by a medical provider in accordance
   with policy."  (Id. ¶ 47.)

28

1   quotations omitted).  Here, however, plaintiffs have plausibly

2   alleged facts that defendants knowingly denied Mr. Galley

3   accommodations in violation of the ADA and the Rehab Act.  <u>See</u>

4   <u>id.</u> at 1001 ("A correctional facility's 'deliberate refusal' to

5   accommodate plaintiff's disability-related needs violates the ADA

6   and the [Rehab Act].") (citation omitted).  Accordingly, the

7   court will deny the motion to dismiss plaintiffs' claim under the

8   ADA and the Rehab Act.

9        IT IS THEREFORE ORDERED that defendants' motion to

10  dismiss (Docket No. 23) be, and the same hereby is, DENIED.

11  Dated:  July 13, 2023

12  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17