1  MICHAEL J. HADDAD (SBN 189114)
2  JULIA SHERWIN (SBN 189268)
   TERESA ALLEN (SBN 264865)
3  HADDAD & SHERWIN LLP
   505 Seventeenth Street
4  Oakland, California 94612
   Telephone: (510) 452-5500
5  Facsimile: (510) 452-5510

6  Attorneys for Plaintiffs

7              **UNITED STATES DISTRICT COURT**

8              **EASTERN DISTRICT OF CALIFORNIA**

9

10 ANTHONY GALLEY, Deceased, by and through his Co-
   Successors in Interest, P.P. and B.P., minors, through
11 their mother and Next Friend, Christina O'Neal,
   Individually and as Co-Successors in Interest for
12 ANTHONY GALLEY, Deceased,

13

14         Plaintiffs,

15 v.

16

17 COUNTY OF SACRAMENTO, a public entity;
   FORMER SACRAMENTO COUNTY SHERIFF SCOTT
18 R. JONES, in his individual capacity; Jail Commander
   ANTHONY PAONESSA, Jail Medical Director VEER
19 BABU, M.D., MAXIM HEALTHCARE SERVICES,
   INC. dba MAXIM STAFFING SOLUTIONS, a
20 Maryland Corporation; MAXIM HEALTHCARE
   STAFFING SERVICES, INC., a Maryland Corporation;
21 ERICA WOODS, R.N., and DOES 1–20; individually,
   jointly, and severally,
22

23

24         Defendants.

Case No: 2:23-cv-00325-WBS-AC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MAXIM DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: September 18, 2023
Time: 1:30 p.m.
Dept.: Courtroom 5, 14th Floor

25

26

27

28

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS........................................................................................................i

TABLE OF AUTHORITIES ..............................................................................................ii

I.      FACTUAL BACKGROUND ................................................................................1

II.     STANDARD OF REVIEW ...................................................................................4

III.    ARGUMENT ........................................................................................................5

      A.     Plaintiffs Plausibly Pled § 1983 Violations Against Defendant Woods for Deliberate Indifference to Anthony Galley's Serious Medical Needs...........5

      B.     Plaintiffs Agree to Dismiss the California Government Code § 845.6 Claim Against Nurse Woods and Maxim Defendants................................................8

      C.     Plaintiffs Plausibly Pled a Bane Act Claim ...................................................9

IV.    CONCLUSION...................................................................................................14

# **TABLE OF AUTHORITIES**

### Federal Cases

*Armstead v. Cnty. of Alameda,*
    No. 21-cv-05257-LB,
    2022 U.S. Dist. LEXIS 54807 (N.D. Cal. March 26, 2022)...........................................12, 13

*Atayde v. Napa State Hosp.*,
    No. 1:16-cv-00398-DAD-SAB,
    2016 U.S. Dist. LEXIS 126639 (E.D. Cal. Sept. 16, 2016)................................................12

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)............................................................................................................4

*Caiozzo v. Koreman,*
    581 F.3d 63 (2d Cir. 2009)..................................................................................................6

*Castro v. Cnty. of L.A.*,
    833 F.3d 1060 (9th Cir. 2016) ...........................................................................................6

*Colwell v. Bannister,*
    763 F.3d 1060 (9th Cir. 2014) ...........................................................................................5

*Cormier v. All Am. Asphalt,*
    458 Fed. Appx. 620 (9th Cir. 2011) ...................................................................................4

*Daniels v. Williams*,
    474 U.S. 327 (1986)............................................................................................................6

*Deloney v. Cnty. of Fresno*,
    Case No. 1:17-cv-01336 LJO,
    2018 U.S. Dist. LEXIS 59220 (E.D. Cal. April 6, 2018) ..................................................8

*Diamond v. Corizon Health, Inc.*,
    Case No. 16-cv-03534 JSC,
    2016 U.S. Dist. LEXIS 166891(N.D. Cal. Dec. 2, 2016) ..................................................8

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...........................................................................................4

*Gibson v. County of Washoe,*
    290 F.3d 1175 (9th Cir. 2002),
    *cert. denied*, 537 U.S. 1106 (2003)............................................................................5, 6, 7

*Gordon v. County of Orange, ("Gordon II"),*
    6 F.4th 961 (9th Cir. 2021) ................................................................................................7

*Gordon v. County of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ...........................................................................6, 7, 11, 14

*Graham v. Connor*,
    490 U.S. 386 (1989) .................................................................................................6

*Greer v. County of San Diego*,
    No. 3:19-cv-0378-GPC,
    2021 U.S. Dist. LEXIS 29224 (S.D. Cal. Feb. 17, 2021) .....................................9

*Hampton v. California, et al.*,
    No. 21-cv-03058-LB,
    2022 U.S. Dist. LEXIS 11817 (N.D. Cal. Jan. 21, 2022) ...................................12

*Harper v. Lawrence County*,
    592 F.3d 1227 (11th Cir. 2010) ..............................................................................5

*Harris v. Escamilla*,
    736 Fed.Appx. 618 (9th Cir. 2018)....................................................................9, 12

*Hernandez v. Cty. of Monterey*,
    110 F. Supp. 3d 929 (N.D. Cal. 2015) ...................................................................5

*Hoptowit v. Ray*,
    682 F.2d 1237 (9th Cir. 1982) ................................................................................6

*Hutchinson v. United States*,
    838 F.2d 390 (9th Cir. 1988) ..................................................................................6

*J.H. v. County of San Mateo*,
    No. 20-cv-00961-VC, 2
    021 U.S. Dist. LEXIS 73983 (N.D. Cal. Apr. 16, 2021) ....................................13

*Jett v. Penner*,
    439 F.3d 1091 (9th Cir. 2006) ................................................................................5

*Johnson v. Shasta Cnty.*,
    83 F.Supp.3d 918 (E.D. Cal. 2015)........................................................................4

*Kellogg v. Kitsap County*,
    No. C12-5717 RJB,
    2013 U.S. Dist. LEXIS 119680 (W.D. Wash. Aug. 22, 2013) .........................7, 8

*Kindl v. City of Berkley*,
    798 F.3d 391 (6th Cir. 2015) ..................................................................................5

*Kingsley v. Hendrickson*,
    135 S. Ct. 2466 (2015).............................................................................................6

*Liscio v. Warren*,
  901 F.2d 274 (2d Cir. 1990)..........................................................................................5

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ....................................................................................4

*Luttrell v. Hart*,
  No. 5:19-cv-07300-EJD,
  2020 U.S. Dist. LEXIS 173856 (N.D. Cal. Sept. 22, 2020) .....................................12

*M.H. v. County of Alameda*,
  (N.D. Cal. 2013) 90 F.Supp.3d 889 .....................................................................11, 14

*M.S. v. County of Ventura*,
  No. CV16-03084-BRO (RAOx),
  2017 U.S. Dist. LEXIS 230939 (C.D. Cal. Mar. 7, 2017).......................................12

*Mays v. Sacramento County*,
  No. 2:18-cv-02081-TLN-KJN (E.D. Cal.)...........................................................2, 8

*McKibben v. McMahon*,
  Case No. EDCV 14-2171 JGB (SPx) (C.D. Cal. Feb. 28, 2019).........................11

*Neuroth v. Mendocino Cty.*,
  No. 15-cv-03226-NJV,
  2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016) ......................................12

*Page v. County of Madera*,
  No. 1:17-cv-00849-DAD-EPG,
  2017 U.S. Dist. LEXIS 199127 (E.D. Cal. Dec. 2, 2017) ......................................12

*Polanco v. California.*,
  No. 21-cv-06516-CRB,
  2022 U.S. Dist. LEXIS 87755 (N.D. Cal. May 16, 2022) ......................................12

*Reason v. City of Richmond*,
  No. 2:20-cv-01900 WBS,
  2023 U.S. Dist. LEXIS 91336 (E.D. Cal. May 24, 2023).........................................9

*Reese v. Cty. of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) ...............................................................................9, 12

*Rodriguez v. County of L.A.*,
  891 F.3d 776 (9th Cir. 2018) .....................................................................................12

*Sandoval v. Cnty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) .....................................................................................12

*Shoar v. Cnty. of Santa Clara*,
      No. C 22-00799 WHA,
      2022 U.S. Dist. LEXIS 189548 (N.D. Cal October 17, 2022) ........................................12

*Skilstaf, Inc. v. CVS Caremark Corp.*,
      669 F.3d 1005 (9th Cir. 2012) .........................................................................................4

*Starr v. Baca*,
      652 F.3d 1202 (9th Cir. 2011) .........................................................................................4

*Swierkiewicz v. Sorema, N.A.*,
      534 U.S. 506 (2002).........................................................................................................4

*Thompson v. Upshur County, Tex.*,
      245 F.3d 447 (5th Cir. 2001) ...........................................................................................5

*Thornhill v. Aylor*,
      3:15-CV-00024,
      2016 U.S. Dist. LEXIS 20153 (W.D. Va. Feb. 19, 2016) ...............................................5

*Vasquez v. Los Angeles Cnty.*,
      487 F.3d 1246 (9th Cir. 2007) .........................................................................................4

*Yela Fiduciary Servs., LLC v. Benton Cnty.*,
      No. 6:20-cv-01925-MK,
      2023 U.S. Dist. LEXIS 132060 (D. Ore. April 12, 2023) ...............................................5

                              California Cases

*Cornell v. City and County of San Francisco*,
      17 Cal.App. 5th 766 (2017) .....................................................................................passim

*Jones v. Kmart Corp.*,
      17 Cal.4th 329 (1998) ......................................................................................................9

*People v. Lashley*,
      1 Cal.App.4th 938 (1991) ..............................................................................................10

*Shoyoye v. County of Los Angeles*,
      203 Cal.App.4th 947 (2012) ..........................................................................................11

*Simmons v. Superior Court*,
      7 Cal.App.5th 1113 (2016) ............................................................................................11

*Venegas v. County of Los Angeles*,
      32 Cal.4th 820 (2004) .........................................................................................9, 10, 11

<u>Federal Statutes</u>

42 U.S.C. § 1983 ..................................................................................................3, 5

<u>California Statutes</u>

California Civil Code §52.1 ................................................................................3, 9, 10

California Government Code § 845.6 .......................................................................3, 8

<u>Other Authorities</u>

Ninth Circuit Model Civil Jury Instruction 9.30 ...............................................................6

<u>Rules</u>

Federal Rule of Civil Procedure 12(b)(6) ....................................................................4

Federal Rule of Civil Procedure 8(a)(2) .....................................................................4

I.   **FACTUAL BACKGROUND**

This is a civil rights/wrongful death action arising from Defendants' deliberate indifference to the serious medical needs of pretrial detainee, Anthony Galley, resulting in his death on February 15, 2022 at the Sacramento County jail.

On February 13, 2022, Mr. Galley was arrested in Sacramento County following a family dispute and transported to the Sacramento County jail.  Upon arrival at the jail, Defendant Erica Woods, R.N., medically screened Mr. Galley for admission and he informed her:

- He had used alcohol within the last 14 days, and within the last 24 hours;
- He had a history of alcohol use;
- He had used hard alcohol on more than 20 days within the last 30 days, and had used hard alcohol for the last 2 years;
- He had last used hard alcohol earlier that day (2/13/22);
- He had a habit of drinking 1 gallon of hard alcohol daily for the last two years; and
- He had a history of alcohol withdrawal.

(FAC ¶ 23).  Mr. Galley also was noticeably intoxicated at that time.  *Id*.  Mr. Galley had a longstanding history of alcohol and drug addiction and would take shots of vodka in four-hour intervals, including while at work, to ensure that he would not experience alcohol withdrawal symptoms.  *Id*. at 24.  Mr. Galley had been detained in Sacramento County Jail many times and had repeatedly informed the jail healthcare staff of his alcohol and drug dependence and his history of serious withdrawal symptoms, including that he would have seizures if he stopped using alcohol.  *Id*.  During several previous jail detentions, Mr. Galley was placed on necessary detoxification and withdrawal protocols.  *Id*.  This information was accessible to Defendant Woods, and she had a medical and legal duty to read those records.  *Id*.

Given the information provided by Mr. Galley about his alcohol usage and high risk of withdrawal, including within the Sacramento County Jail as documented in his jail medical records, Nurse Woods was required to put him on immediate detoxification and alcohol withdrawal protocols, such as CIWA (Clinical Institute Withdrawal Assessment), which would have included repeated monitoring, assessments for withdrawal symptoms (every 8 hours, at minimum), vitamins such as thiamine, folic acid,

multivitamins, and medications such as diazepam to prevent serious alcohol withdrawal. (FAC ¶ 25). Nurse Woods failed to put Mr. Galley on any alcohol detoxification protocols at all. *Id*. After Nurse Woods's initial intake assessment, despite documenting Mr. Galley's alcohol dependence and high risk of severe alcohol withdrawal, neither Nurse Woods, nor any other jail medical personnel, ever monitored or conducted follow-up assessments of Mr. Galley for signs of alcohol withdrawal, even after he made a request to be seen by jail medical staff and was denied. (FAC ¶27).

In the early morning hours of February 15, 2022, after spending two days in the holding cell with no follow-up assessments, monitoring, or alcohol detoxification protocols, Mr. Galley had a seizure while lying on a table in the holding cell. (FAC ¶ 27). Upon witnessing Mr. Galley's seizure, other inmates in the cell tried to get the attention of the jail staff, but jail staff ignored their pleas for help until several inmates finally began banging on the cell windows and screaming for help. *Id*. Approximately 30 minutes elapsed before jail deputies arrived. *Id*. Life-saving measures were administered and Mr. Galley was transported to Sutter Medical Center where he was pronounced dead.

Within hours of his admission into the jail, Mr. Galley likely began experiencing symptoms of alcohol withdrawal (such as nausea, vomiting, diarrhea, body aches, and cold sweats), which jail medical and custody staff ignored, and which progressed to untreated and completely preventable severe, life-threatening alcohol withdrawal, ultimately causing his seizure and death. (FAC ¶¶ 29, 31, 47). The specific alcohol withdrawal symptoms Mr. Galley exhibited are unknown to Plaintiffs due to Nurse Woods's failure to conduct or request any follow-up assessments of Mr. Galley whatsoever. Jail surveillance cameras allegedly captured Mr. Galley's seizure and his condition leading up to his seizure, but the Sacramento County Defendants have refused to provide the surveillance footage to Plaintiffs. (FAC ¶ 30).

In *Mays v. Sacramento County*, No. 2:18-cv-02081-TLN-KJN (E.D. Cal.), a class action lawsuit filed against Sacramento County in 2018 alleging dangerous and unconstitutional conditions in Sacramento County jails, the court approved a settlement adopting a Consent Decree requiring Sacramento County to implement a broad Remedial Plan to address the deficiencies in its jail healthcare concerning detoxification protocols for inmates suffering withdrawal symptoms. The jail was monitored by the court's experts for compliance with the Remedial Plan. (FAC ¶ 47). The court's experts reported

the jail's healthcare staff's repeated failures to properly assess, monitor, and care for inmates at risk of substance use withdrawal, including a report four months before Mr. Galley's death describing jail healthcare staff's failures to timely monitor patients for alcohol withdrawal and implement medically necessary detoxification protocols consistent with the allegations against Nurse Woods.  (FAC ¶¶ 47-52).

The Third Monitoring Report specifically addresses Mr. Galley's wrongful death, concluding with the following opinion:

> This patient gave a history of severe alcohol substance abuse upon arrival with detox symptoms. The patient remained in booking, but neither CIWA assessments or health checks were documented as being performed per policy. Inmates reported that the patient had a seizure prior to arresting. *This case represents a profound failure to recognize, monitor and treat a patient at risk of severe alcohol withdrawal. The patient was not evaluated by a medical provider in accordance with policy.*

(FAC ¶ 47).

Mr. Galley's minor children, P.P. and B.P., bring civil rights/wrongful death claims against Sacramento County and its employees, former Sacramento County Sheriff Scott R. Jones, Jail Commander Anthony Paonessa, Jail Medical Director, Veer Babu, M.D.; Maxim Healthcare Services, Inc. and Maxim Healthcare Staffing Services (collectively "the Maxim entities"), and Maxim employee, Erica Wood, R.N. under: (1) 42 U.S.C. § 1983 for deliberate indifference to Mr. Galley's serious medical needs against Nurse Woods; (2) *Monell* and supervisory liability claims against the County and Defendants Jones, Paonessa, and Babu; (3) violations of California Civil Code §52.1 against all Defendants; (4) negligence against Defendants Jones, Paonessa, Babu, and the Maxim corporate Defendants; (5) violation of Cal. Gov. Code § 845.6 (failure to summon emergency medical care) against the County and Nurse Woods; and (6) Americans with Disabilities Act and the Rehabilitation Act against the County.

The Maxim Defendants and Nurse Woods challenge Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment Due Process claim for deliberate indifference to Mr. Galley's serious medical needs claim against Nurse Woods, and the Cal. Gov. Code § 845.6 (failure to summon emergency medical care) and the California Civil Code §52.1 (Bane Act) claims against Nurse Woods and the Maxim Defendants. Plaintiffs have plausibly and sufficiently pled the claims challenged herein, and the motion to dismiss should be denied in its entirety.

## II.    STANDARD OF REVIEW

A complaint must satisfy the general notice pleading requirements of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513–14 (2002).[1]  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  The factual allegations need only "be enough to raise a right to relief above the speculative level." *Id.*  The claims must be "plausible," which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting them. *Id.* at 556.

A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007), and it "'must consider the complaint in its entirety[.]'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).  When allegations may yield multiple inferences, the court must adopt whichever plausible inference supports the Plaintiff and deny the motion to dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).  Pleading facts "'on information and belief' is sufficient to survive a motion to dismiss as long as the other *Iqbal-Twombly* factors are satisfied." *Johnson v. Shasta Cnty.*, 83 F.Supp.3d 918, 926 (E.D. Cal. 2015) (citations omitted).

Finally, leave to amend shall by freely given when justice so requires. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is to be applied with extreme liberality." *Id.* (citations omitted).  See also *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

---

[1] Even after *Iqbal* and *Twombly*, *Swierkiewicz* remains good law.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 569-70 (2007) (explaining that the Court's analysis does not run counter to *Swierkiewicz*); *See also Starr v. Baca*, 652 F.3d 1202, 1213-16 (9th Cir. 2011) (reconciling *Swierkiewicz* with *Iqbal* and *Twombly*); *Cormier v. All Am. Asphalt*, 458 Fed. Appx. 620 (9th Cir. 2011) (acknowledging that *Swierkiewicz* is still good law).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III. ARGUMENT

#### A. Plaintiffs Plausibly Pled § 1983 Violations Against Defendant Woods for Deliberate Indifference to Anthony Galley's Serious Medical Needs

"[T]he Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own." *Gibson v. County of Washoe*, 290 F.3d 1175, 1188, n. 9 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). "This duty to provide medical care encompasses detainees' psychiatric needs." *Id*, at 1187.

To prevail on a claim of deliberate indifference against an official, a plaintiff must demonstrate that (1) he had a serious medical need, (2) the official was deliberately indifferent to that need, and (3) this indifference caused him harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need is one which, without treatment, "could result in further significant injury or the unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id.*

Risk of alcohol withdrawal is a serious medical need. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). See also, *Harper v. Lawrence County*, 592 F.3d 1227, 1235-37 (11th Cir. 2010) (denying qualified immunity where decedent did not receive any medical care for his severe alcohol withdrawal); *Liscio v. Warren*, 901 F.2d 274, 276-77 (2d Cir. 1990) (doctor failed to inquire into cause of arrestee's delirium and failed to diagnose alcohol withdrawal); *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 948 (N.D. Cal. 2015) ("Withdrawal is a serious and potentially deadly medical condition, with symptoms including seizures, hallucinations, agitation and increased blood pressure."); *Yela Fiduciary Servs., LLC v. Benton Cnty.*, No. 6:20-cv-01925-MK, 2023 U.S. Dist. LEXIS 132060, at *23 (D. Ore. April 12, 2023) ("It is well established in case law that withdrawal constitutes a serious medical need for purposes of an inadequate medical care claim"); *Kindl v. City of Berkley*, 798 F.3d 391, 402 (6th Cir. 2015); ("Delirium tremens is a severe form of alcohol withdrawal and is unquestionably a serious medical condition within the meaning of the Fourteenth Amendment."); *Thornhill v. Aylor*, 3:15-CV-00024, 2016 U.S. Dist. LEXIS 20153, at *14 (W.D. Va. Feb. 19, 2016) ("Several courts have found that symptoms of alcohol and drug withdrawal qualify as a serious medical

need" (collecting cases)); *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (where plaintiff's decedent entered a jail and presented obvious risks of alcohol withdrawal and later entered withdrawal, the court held "there is no dispute that Caiozzo had a serious medical condition.").

Next, a pretrial detainee must show the defendant officials were objectively deliberately indifferent to that serious medical need. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). (See Doc. 30, Memorandum and Order Re: County Defendants' Motion to Dismiss, p. 13). Defendants' whole argument relies on old law, pre-*Gordon*, that required proof of subjective deliberate indifference no longer required for a pretrial detainee's medical needs claim. To demonstrate objective deliberate indifference, a pretrial detainee must show: "(1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries." *Id,* (see also Ninth Circuit Model Civil Jury Instr. 9.30). *Gordon* explains:

> "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" [*Castro*, 833 F.3d ] at 1071 (quoting *Kingsley*, 135 S. Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396 [ ] (1989)). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting *Daniels*, 474 U.S. at 330-31). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*.

Deliberate indifference may be shown where prison officials or practitioners "deny, delay, or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Additionally, "[a]ccess to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be competent to examine prisoners and diagnose illnesses." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

Deliberate indifference can also be proven by the failure to medically screen a new jail inmate with serious medical needs. *Gibson,* 290 F.3d at 1189-93. Under the old, higher, subjective deliberate indifference standard, *Gibson* held that a jury could find a constitutional violation by an intake nurse who "knew that [the plaintiff] was in the throes of a manic state" but "fail[ed] to provide for the identification

of [his urgent mental health] needs." *Id.* at 1193-96  "[A] pretrial detainee's right to proper medical screening was clearly established." *Gordon v. County of Orange, ("Gordon II")*, 6 F.4th 961, 970 (9th Cir. 2021) (jury could find that nurse failed to use "the proper medical screening form to ensure the initiation of a medically appropriate protocol").

The FAC properly alleges that Nurse Woods's failure to initiate alcohol withdrawal protocols precipitated the progression of Mr. Galley's alcohol withdrawal symptoms, his seizure, and ultimate death. However, Defendants assert "there are no facts pleaded that Nurse Woods was actually aware of facts to put her on notice that Mr. Galley was at serious risk for seizures and that she determined he was, in fact, a seizure risk." (Doc. 35, p. 12).  Defendants ignore *Gordon* entirely and incorrectly contend that the subjective deliberate indifference standard articulated in pre-*Gordon* cases is applicable here.

*Kellogg v. Kitsap County,* No. C12-5717 RJB, 2013 U.S. Dist. LEXIS 119680, at * 9 (W.D. Wash. Aug. 22, 2013), a pre-*Gordon* district court case on which Defendants rely, "construe[d] Plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards."  But that is not the proper standard.  "[M]edical care claims brought by pretrial detainees...arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishments Clause."  *Gordon*, 888 F.3d at 1124.  Therefore, "claims for violations of the right to adequate medical care "brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Id*. at 1124-25.

Under the objective deliberate indifference standard, Plaintiffs plausibly pled that Nurse Woods (1) made an intentional decision to deprive Mr. Galley of needed alcohol detoxification protocols after Mr. Galley informed her during intake of his chronic alcohol use and history of withdrawal (FAC ¶ 25, 38 64); (2) that denial of appropriate detoxification protocols, such as CIWA, including repeated monitoring, assessments for withdrawal symptoms (every 8 hours, at minimum), vitamins such as thiamine, folic acid, multivitamins, and medications such as diazepam to prevent serious alcohol withdrawal, put Mr. Galley at substantial risk of severe alcohol withdrawal and death (FAC ¶25); (3) Nurse Woods did not take reasonable available measures, such as initiating life-saving detoxification protocols and conducting follow-up assessments, to abate or reduce the risk of severe alcohol withdrawal to Mr. Galley, even though consistent with nationally recognized clinical standards and, on information and belief, Sacramento County Sheriff's Office policy, any competent Registered Nurse would have understood that Mr. Galley

was required to be put on alcohol detoxification protocols like CIWA (FAC ¶¶ 25, 29); and (4) Nurse Woods's conduct was a substantial factor in causing Mr. Galley's injury, seizure, and death.  (FAC ¶¶ 31, 32).

       Even if *Kellogg*, *supra*, were applicable, the facts are strikingly different.  The plaintiff in *Kellogg* initially under-reported his history of alcohol use, was only in the jail for a few hours without withdrawal symptoms, had been evaluated twice by medical staff within an approximately 3-hour time period, and had a seizure while in the process of signing paperwork to be bailed out and transported to a detox facility by his mother.  *Id*. at 16-17.  There, the court found that the plaintiff did not meet his burden of establishing deliberate indifference under the Eighth Amendment.  *Id*. at 17-18.  Mr. Galley, on the other hand, had a history of being placed on detoxification protocols during previous incarcerations at the jail, as documented in his medical records which were at all times accessible to Nurse Woods, Mr. Galley immediately informed Nurse Woods about his severe alcohol dependency, spent two days in the jail's holding tank without any follow-up evaluations after Nurse Woods's intake assessment, and was likely exhibiting withdrawal symptoms within hours of his arrival at the jail, which were left untreated and led to his seizure and death.  As the *Mays* court experts concluded in the Third Monitoring Report concerning Mr. Galley's death: "*This case represents a profound failure to recognize, monitor and treat a patient at risk of severe alcohol withdrawal.* (FAC ¶47).

### B.  Plaintiffs Agree to Dismiss the California Government Code § 845.6 Claim Against Nurse Woods and Maxim Defendants

       Plaintiffs concede that at this time, Nurse Woods appears to be an employee of the Maxim entities, and therefore would not be a "public employee" for purposes of Cal. Gov. Code § 845.6.  See, *Diamond v. Corizon Health, Inc.*, Case No. 16-cv-03534 JSC, 2016 U.S. Dist. LEXIS 166891, at *8, 2016 WL 7034036 (N.D. Cal. Dec. 2, 2016) ("Section 845.6 liability does not extend to private entities under contract with the State," and finding the Government Code "clearly defines 'public entity'" and there is "no ambiguity in the statutory language."); *Deloney v. Cnty. of Fresno*, Case No. 1:17-cv-01336 LJO, 2018 U.S. Dist. LEXIS 59220, at *17 n.12, 2018 WL 3388921 (E.D. Cal. April 6, 2018) (same).

       Plaintiffs therefore agree to dismiss their § 845.6 claim against Defendants Woods and Maxim.

### C.  Plaintiffs' Plausibly Pled a Bane Act Claim

This Court already rejected the same argument made by County Defendants in this case that Defendant Woods now makes.  (See Doc. 30, pp. 11-14).  This Court should deny the argument that Defendant Woods lacked "specific" intent for her due process violations for the same reasons.  And, the Maxim Defendants would be vicariously liable for their employee, Erica Woods's, Bane Act liability as well.  See *Reason v. City of Richmond*, No. 2:20-cv-01900 WBS, 2023 U.S. Dist. LEXIS 91336, 2-3 (E.D. Cal. May 24, 2023) (vicarious liability applies to Bane Act claim); *Greer v. County of San Diego*, No. 3:19-cv-0378-GPC, 2021 U.S. Dist. LEXIS 29224 at *28-29, (S.D. Cal. Feb. 17, 2021) (vicarious liability applied to private jail medical provider for Bane Act claim).

The Bane Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law.  Cal. Civ. Code, § 52.1, subd. (b)–(c).  The California Supreme Court long ago explained that the Bane Act simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion."  *Jones v. Kmart Corp.,* 17 Cal.4th 329, 334 (1998).  Many if not all violations of fundamental rights could be so framed. *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 850-51 (2004) (Baxter, J., concurring).

In *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (review denied), the Court of Appeal noted that the Bane Act has been "the source of much debate and confusion" in federal district courts, and "[w]e have endeavored to provide some clarity."  *Id.* at 801.  *Cornell* explained that the California Supreme Court "declined to place added restrictions on the scope of section 52.1" beyond its plain language (citing *Venegas,* 32 Cal.4th at 843), and therefore, "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."  *Id.* at 800.  Indeed, as *Cornell* points out, the Act simply requires an interference with rights "*by* threat, intimidation, or coercion."  *Id.*

Applying that rule to the false arrest claim at issue there, *Cornell* concluded:

> Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, *in addition*, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved— unlawful arrest.

1  *Id.*  The Ninth Circuit has adopted this holding from *Cornell*.  See *Harris v. Escamilla*, 736 Fed.Appx.

2  618, 621 (9th Cir. 2018) (citing *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018)

3  (recognizing *Cornell* as setting the controlling Bane Act pleading standard in cases such as this one

4  alleging more than mere negligence).

5       Thus, given that the required "threat, intimidation, or coercion" may be inherent in the violation of

6  a right, *Cornell* went on to hold that the threat, intimidation or coercion required by the Act can be proven

7  simply by the violation of a constitutional right if done with specific intent: "where, as here, an unlawful

8  arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the

9  circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom

10  from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent'

11  in the wrongful detention."  *Id.*, at 801-02.

12       To prove that defendants violated a constitutional right with specific intent, the plaintiff must

13  show: (1) that the "right at issue [is] clearly delineated and plainly applicable under the circumstances of

14  the case;" and (2) that "the defendant commit[ted] the act in question with the particular purpose of

15  depriving the citizen victim of his enjoyment of the interests protected by the right."  *Id.*, at 803.  As for

16  the second step, whether the defendants "understood they were acting unlawfully [is] not a requirement.

17  **Reckless disregard of the 'right at issue' is all that [is] necessary."**  *Id.*, at 804 (emphasis added).

18  "[E]ven if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a

19  matter of law to have acted [with the requisite specific intent]—*i.e.*, 'in reckless disregard of

20  constitutional [or statutory] prohibitions or guarantees.'"  *Id.*, at 803 (quoting *People v. Lashley,* 1

21  Cal.App.4th 938, 948–949 (1991)).

22       *Cornell's* holding that violation of a constitutional right with specific intent fully satisfies a claim

23  for relief under the Bane Act was anticipated by the California Supreme Court, and particularly Justice

24  Baxter's concurrence in *Venegas*: "[A]lthough the proscribed conduct is further delineated by the

25  requirement that it be delivered in the form of a threat, intimidation, or coercion, it should not prove

26  difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional

27  right, including mere technical statutory violations, as incorporating a threatening, coercive, or

28  intimidating verbal or written component."  *Venegas,* 32 Cal.4th at 850-51.

*Cornell* noted that "[its] reading of Section 52.1 is consistent with the view taken by 'the majority of federal district courts in California [, which] have held [in Bane Act cases] that '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'" *Cornell*, 17 Cal.App.5th at 802, n. 31 (quoting *Simmons v. Superior Court,* 7 Cal.App.5th 1113, 1126 (2016) and citing numerous other authorities).   Among the many other cases cited in footnote 31, the *Cornell* Court noted that courts already had held due process violations automatically satisfied the Bane Act's "threat, intimidation, or coercion" requirement:

> And in some circumstances, depending on the right alleged to have been interfered with, physical force is not required at all. ([*McKibben v. McMahon* (C.D. Cal., Apr. 17, 2015, No. EDCV 14-02171 JGB (SPx))], 2015 U.S.Dist. Lexis 176696 at p. *8 ["coercive choice" forced upon gay, bisexual or transgender inmates to accept segregated housing with fewer privileges than other inmates]; *M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F.Supp.3d 889, 898 [deliberate indifference to prisoner's medical needs].

*Id*.

In *M.H., supra,* Northern District Judge Jon Tigar also presaged *Cornell's* interpretation of the Bane Act, concluding that "the relevant distinction under the Bane Act is between intentional and unintentional conduct."  90 F.Supp.3d at 898.  "From its inception, 'deliberate indifference' has been a substantially higher standard than negligence, and has been associated with affirmatively culpable conduct." *Id*., (citations omitted).  The court went on to explain how deliberate indifference requires "a purposeful act or failure to respond …." *Id.,* at 899.  Thus,

> Because deliberate indifference claims necessarily require more than "mere negligence," a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights presents a case far more like *Venegas* [*supra*, 32 Cal.4th 820 (2004)] than *Shoyoye* [*v. County of Los Angeles*, 203 Cal.App.4th 947 (2012)] and adequately states a claim for relief under the Bane Act.

*Id.* Since *M.H.*, the Ninth Circuit has explained that the objective deliberate indifference standard that now applies to pretrial detainees' denial of medical care claims is essentially "reckless disregard" – the same standard that can prove "threat, intimidation, or coercion" under the Bane Act.  See *Gordon*, 888 F.3d at 1125 ("… the plaintiff must prove more than negligence but less than subjective intent— something akin to reckless disregard.").

In addition to this Court in this case (see Doc. 30, p. 12), several other courts have followed

*M.H.'s* holding for due process claims predicated on a denial of medical care to an inmate, including *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) ("[t]he court finds the reasoning of the decision in *M.H.* to be more persuasive, adopts that analysis and **finds that threats, coercion, and intimidation are inherent in a deliberate indifference claim**."); *M.S. v. County of Ventura*, No. CV16-03084-BRO (RAOx), 2017 U.S. Dist. LEXIS 230939, at *73-75 (C.D. Cal. Mar. 7, 2017) (same); *Page v. County of Madera*, No. 1:17-cv-00849-DAD-EPG, 2017 U.S. Dist. LEXIS 199127, at *10-11 (E.D. Cal. Dec. 2, 2017) (same); *Luttrell v. Hart*, No. 5:19-cv-07300-EJD, 2020 U.S. Dist. LEXIS 173856, at *15-16 (N.D. Cal. Sept. 22, 2020) (same); *Neuroth v. Mendocino Cty.*, No. 15-cv-03226-NJV, 2016 U.S. Dist. LEXIS 11109, at *22 (N.D. Cal. Jan. 28, 2016) (Bane Act claim pled where Sheriff implemented policies, practices, and customs that led to inmate's death due to correctional deputies' deliberate indifference to serious medical/psychiatric needs).

Courts have continued to hold that the coercion element of the Bane Act is satisfied when plaintiffs allege deliberate indifference to an inmate's safety. See *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 U.S. Dist. LEXIS 189548, at 10* (N.D. Cal October 17, 2022) ("A plaintiff can satisfy the specific intent requirement of the Bane Act by showing defendant acted with reckless disregard of the right at issue"); *Polanco v. California*., No. 21-cv-06516-CRB, 2022 U.S. Dist. LEXIS 87755, at *10 (N.D. Cal. May 16, 2022) (observing that "a defendant who acts with deliberate indifference toward an inmate may satisfy the 'threat, intimidation, or coercion' element, as the custody context makes that violation especially coercive" and collecting cases holding similarly); *Armstead v. Cnty. of Alameda*, No. 21-cv-05257-LB, 2022 U.S. Dist. LEXIS 54807, at 24* (N.D. Cal. March 26, 2022) ("[B]y pleading deliberate indifference, the plaintiffs here alleged the specific intent required for the Bane Act claim.").[2]

---

[2] Numerous other courts have applied *Cornell's* holding (specific intent = "by threat, intimidation, or coercion") to claims other than false arrest: see *Reese v. County of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018) (Fourth Amendment excessive force); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (Fourth Amendment claim based on impoundment of a vehicle); *Rodriguez v. County of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (Eighth Amendment excessive force to inmate); *Luttrell v. Hart*, No. 5:19-cv-007300-EJD, 2020 U.S. Dist. LEXIS 173856, at *5 (N.D. Cal. Sept. 22, 2020) (due process claim for failure to protect an inmate from violence). The *Lutrell* court held, "if a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then he has sufficiently alleged the intent required for the Bane Act claim." 2020 U.S. Dist. LEXIS 173856, at *5 (citing Eighth Amendment medical-needs cases holding that a viable claim of deliberate indifference

Plaintiffs plausibly alleged violations of the Bane Act against Nurse Woods and, vicariously, the Maxim Defendants.  The FAC states:

> By their acts, omissions, customs, and policies, DEFENDANTS WOODS, JONES, PAONESSA, BABU, DOES 1-20, COUNTY, and MAXIM by threat, intimidation, and/or coercion, or with reckless disregard for rights, interfered with, attempted to interfere with, and violated Plaintiffs' and MR. GALLEY's rights ….

(FAC ¶ 63).

> Defendants' violations of Plaintiffs' and Decedent' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.  Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights as described above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:
>
> > a.  Intentionally and with deliberate indifference, depriving and/or preventing MR. GALLEY from receiving necessary, life-saving medical care and treatment while he was under Defendants' complete custody, care, and protection and unable to secure such care and treatment for himself;
> >
> > b.  Making the conscious choice not to consistently provide the required observation for inmates at high risk of alcohol withdrawal, knowing that some inmates like MR. GALLEY will be deprived of necessary, life-saving care;
> >
> > c.  Instituting and maintaining the COUNTY's customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as MR. GALLEY and Plaintiffs would be deprived of rights;
> >
> > d.  Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (c) when it was also obvious that in doing so, Decedent was at grave risk of life-threatening alcohol withdrawal and death, and Plaintiffs' rights as Decedent's children also would be violated.

(FAC ¶ 64).

> Further, each Defendant violated Plaintiffs' and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

---

satisfies the intent element of the Bane Act); *Hampton v. California, et al.*, No. 21-cv-03058-LB, 2022 U.S. Dist. LEXIS 11817, at *2 (N.D. Cal. Jan. 21, 2022) (Eighth Amendment denial of medical care).

See also *Harris*, 736 Fed. Appx. at 621 (finding that violations of First and Fourteenth Amendments, if pled with specific intent, are sufficient to state a Bane Act claim); *Armstead v. County of Alameda*, No. 21-cv-05257-LB, 2022 U.S. Dist. LEXIS 54807 at *23-26 (N.D. Cal. Mar. 26, 2022) (defendants' deliberate indifference in due process state created danger claim satisfies Bane Act coercion requirement); *J.H. v. County of San Mateo*, No. 20-cv-00961-VC, 2021 U.S. Dist. LEXIS 73983, at *4 (N.D. Cal. Apr. 16, 2021) (same).

(FAC ¶ 68).

Based on *Cornell, M.H.,* and their progeny, Plaintiffs plausibly pled that Defendants intentionally, and with deliberate indifference to Mr. Galley's serious medical needs, deprived him of constitutional rights by threat, intimidation, or coercion, in violation of the Bane Act. The objective deliberate indifference standard for an inmate's medical needs claim is "akin to reckless disregard" (*Gordon*, 888 F.3d at 1125), the same standard that can stand-in for the requisite threat, intimidation or coercion. This Court agreed in its previous Order dismissing the County Defendants' Motion to Dismiss the FAC: "Although plaintiffs only assert their Fourteenth Amendment deliberate indifference claim against the Medical Defendants (see FAC ¶¶ 36-44), the court finds such allegations sufficient to support a Bane Act claim for deliberate indifference to serious medical needs." (Doc. 30, p. 14).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the FAC should be denied in its entirety. Plaintiffs request leave to amend if any part of this motion is granted.

Dated:  August 22, 2023                                       HADDAD & SHERWIN LLP

                                                         By:     /s/ *Michael J. Haddad*
                                                                 MICHAEL J. HADDAD
                                                                 Attorneys for Plaintiffs