UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY GALLEY, Deceased, by and through his Co-Successors in Interest, P.P. and B.P., minors, through their mother and Next Friend, Christina O'Neil, Individually and as Co-Successors in Interest for ANTHONY GALLEY, Deceased,

Plaintiffs,

v.

COUNTY OF SACRAMENTO, a public entity; FORMER SACRAMENTO COUNTY SHERIFF SCOTT R. JONES, in his individual capacity; Jail Commander ANTHONY PAONESSA, Jail Medical Director VEER BABU, M.D., ERICAWOODS, R.N., and DOES 1-20; individually, jointly and severally,

Defendants.

No. 2:23-cv-0325 WBS AC

ORDER

This case is before the court on a motion to a protective order brought by defendants. ECF No. 85. The parties submitted the required joint statement. ECF No. 90. The motion was taken under submission. ECF No. 86. For the reasons set forth below, the motion is DENIED.

////

////

## I. Relevant Background and Motion

This action arises from the in-custody death of Anthony Galley at the Sacramento County Main Jail. ECF 20 (First Amended Complaint). Mr. Galley had a history of alcohol abuse and alcohol withdrawal; he was noticeably impaired when he was brought to the Main Jail on February 13, 2022. ECF No. 20 at 9. According to the operative complaint, Mr. Galley informed Jail staff of his condition but was not put on necessary detoxification protocols and died due a seizure induced by alcohol withdrawal on February 15, 2022.

On July 15, 2026, plaintiff served County defendants with a request under Fed. R. Civ. P.26 and 34 to "inspect, measure and photograph the Sacramento County Jail, every place in the jail where Anthony Galley was taken, including but not limited to the office where an intake assessment was performed on Mr. Galley, and all cells where he was held during his jail detention from February 13, 2022 to February 15, 2022[.]" Exhibit A, Rule 34 Jail Inspection Notice (ECF No. 90-1). Plaintiff argues that an inspection of such areas of the jail is relevant and proportional to the needs of this case because it will be important for the court and for a jury to understand the physical layout where Mr. Galley was housed, booked, and where he received his deficient medical screening at the jail. ECF No. 90 at 3. Plaintiff alleges that the information they have, which includes unclear videos from a single vantage point, cannot accurately depict the actual spaces involved, including defendants' ability to observe and respond to Mr. Galley's severe and ultimately deadly alcohol withdrawal, Mr. Galley's inability to help himself for his own deteriorating condition, and the lack of legally required privacy for his medical screening. Id.

Defendants object to the in-person site inspection of the Sacramento County Main Jail booking area, arguing they have produced several thousand pages of documents, photographs and video surveillance from the incident, and that plaintiff has failed to articulate any basis for why they need to conduct a site inspection of the Main Jail under the Federal Rules of Civil Procedure other than claims that they have done so before in other cases. ECF No. 90 at 5. Defendants argue that an in-person "inspection" of the booking area of the Man Jail, the busiest, most volatile, and most sensitive area of the entire facility, is neither proportional to the needs of this case nor practical to accommodate. ECF No. 90 at 8. Defendants argue that plaintiff's counsel

already has video footage depicting the very areas where Mr. Galley was located in booking on the date of the incident, and an in-person inspection would add nothing to that record, while imposing a severe and unjustified burden on defendants and other non-parties that regularly need access to the locations. Id.

To support their argument, defendants submit the declaration of Diane Vasquez. ECF No. 90-1 at 15. Vasquez, a Deputy with Sacramento County Sheriff's Office currently assigned as Legal Adviser in the Legal and Policy Sustainment Bureau of the Legal Affairs Unit, states that an in-person inspection of the booking area of the Main Jail would require the area to be cleared, with booking operations temporarily suspended. Id. at 15, 17. Although there is an alternate facility where individual can be diverted, that facility "is not set up to process the volume of inmates handled at MJ on a daily basis and could not process the arrestees which could need to be diverted from the MJ during an in-person inspection." Id. at 18. Vasquez further states that inspection could create security and privacy risks, because the booking area has computer terminals that can display confidential criminal histories, and if information about the physical layout of the facility were released to the public, that information could be misused. Id. at 18-19.

A. Applicable Legal Standard

Parties are entitled to discovery regarding any nonprivileged information that is relevant to any claim or defense in their case. Fed. R. Civ. P. 26(b)(1). Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fun, Inc. v. Sanders, 437 U.S. 340, 351 (1978). For good cause, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" with respect to another party's discovery requests. Fed. R. Civ. 26(c)(1). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F .3d 1206, 1210–11 (9th Cir.2002). The court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

B. Defendants Have Not Shown Good Cause

The court is not persuaded by defendants' arguments and finds that they have failed to show good cause for a protective order. The declaration of Deputy Vasquez is conclusory and unpersuasive. Vazquez indicates that there may be privacy concerns for inmates because the booking area can contain private information displayed on computer screens, but the solution to this problem would be to turn off or cover the screens, not prevent the inspection. Indeed, the arguments presented by the defendants largely contradict one another. For example, to the extent Vasquez contends that inmate privacy is an issue, her own statement that the area would need to be cleared of inmates and that a closure would have to be planned eviscerates the argument. And any security concerns about public release of certain information can be addressed by protective order.

Further, insofar as Vazques contends that the alternate booking facility is not equipped to handle all the usual traffic of the Main Jail, that argument illogically presumes that the inspection would take an entire day and the alternate facility would need to absorb an entire day's worth of traffic. Presumably, the booking area is not equally busy at all times of day and night and on all days of the week. The court is not persuaded that a workable arrangement is entirely unavailable. Despite the produced videos, an in-person inspection is proportional to the needs of this case, and the undersigned concludes that in light of all circumstances presented, it is not unduly burdensome to defendants. The parties are directed to cooperate in order to reach a workable arrangement for a site visit, including as to the booking area a time limit and a date and time for the inspection which will require least interruption to operations. Accordingly, the motion for a protective order is denied.

## II. Conclusion

Defendants' motion for a protective order (ECF No. 85) is DENIED.

IT IS SO ORDERED.

DATED: October 16, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE